SILAS F. TROTTER et al. *v.* THOMAS W. WHITE, Adm'r, &c.

Where a sale of mortgaged premises is set aside on account of the constructive fraud of a party purchasing the property, in derogation of the interests of those for whom he was acting as agent; it is *held,* that he "must be put in the same situation he was before the purchase;" and that he was entitled to be reimbursed the amount paid by him on the purchase and towards the discharge of the incumbrances on the property.

A prior mortgagee's rights, who had nothing to do with the sale, must also be presumed to be restored to the condition in which they were before the sale, after it has been declared invalid.

Where certain property is not named in a bill for the foreclosure of a mortgage, nor specified in the mortgage, it will not be held liable to such a bill.

Where a party, without just claim or interest, wrongfully *detains* the property of another after due demand, such party is responsible for the value of the property, if it should be afterwards lost or destroyed by casualty.

But this rule cannot be properly applied to a case where the party detaining the property has an interest in the property equal in right to that of the party demanding it. *Semble,* where property is in litigation, and one party has given bond for its forthcoming at the termination of the suit, he is only bound to use such care and vigilance as a sheriff would be bound to exercise over it.

IN error from the northern district chancery court at Holly Springs; Hon. Henry Dickinson, vice-chancellor.

This case has been before the court at a previous term, and will be found reported in 14 S. & M. 33, where a history and full statement of the facts of the case will be found in the opinion of Chief Justice Sharkey. The facts upon which this case now depends, will be sufficiently set forth in the opinion of the court. The case now comes into court upon a writ of error by appellants, (Trotter et al.,) and a cross writ of error by appellee, taken out at the same time.

*W. F. Stearns,* for appellants, filed an elaborate brief in the case.

*Watson* and *Craft,* for appellee, in reply, filed an elaborate written argument.

Mr. Justice HANDY delivered the opinion of the court.

This case was heretofore before this court, and the decision of it is reported in 14 S. & M. 33. By that decision the principles mainly governing the case were settled, and cannot be questioned as the case is now presented. The case was remanded, and an account between the parties directed to be taken, upon the principles stated. An account was taken, and a decree rendered in the vice-chancery court; and, upon exceptions taken by both parties to that account, the case is again before us on the appeals of both parties. These exceptions are the proper subjects for our present determination, and we will proceed to consider such of them as have been insisted on here, attending first to those urged in behalf of the appellants, Silas F. Trotter and Mrs. Mayers.

The first and most important objection to the account and decree is, that Mrs. Mayers was excluded from all benefit of the mortgaged property towards the payment of her debt, and this is insisted to be contrary to the principles settled by this court in the previous decision of the case. We think this objection well founded. By that decision, the sale of the mortgaged premises was set aside on account of the constructive fraud of Silas F. Trotter in purchasing the property in derogation of the interests of those for whom he was acting as agent, and it is held that he " must be put in the same situation he was before the purchase," and that he was entitled to be reimbursed the amount paid by him on the purchase and towards the discharge of incumbrances on the property. It is not positively stated in the opinion that, as the sale was invalid, Mrs. Mayers' rights must also be restored to the condition in which they were before the sale was made, and as she had the prior mortgage before the sale, that her right arising therefrom would be preserved after the sale was declared invalid. Nor is it positively said that the notes of Silas F. Trotter, given for the purchase-money of the mortgaged property, would cease to be obligatory after the sale was declared void and annulled. But these consequences necessarily follow from the principles stated by the court, and seem to have been taken for granted. For if Silas F. Trotter, who was held to be in law a fraudulent purchaser,

8*

must be "put in the same situation he was before the purchase," how much greater reason is there for restoring Mrs. Mayers to her equities, who was not implicated in his fraud? How could he be put in the same situation he occupied before the purchase, if his notes given for the purchase-money could be enforced against him, after he had been deprived of the property for which the notes were given? It is manifest that the court considered and intended to hold, that the sale was void both as to Mrs. Mayers and Silas F. Trotter, and that they were entitled to occupy the same position they held before the sale was made, and accordingly that Trotter was even entitled to be reimbursed for moneys paid, which were parcel of the purchase-money, in discharging incumbrances on the property. According to this view, when the court says, "the complainant will be entitled to the balance produced by the sale of the property," it must be understood to be the balance, after the prior claim of Mrs. Mayers upon the property and the amount ascertained to be due Silas F. Trotter, should be paid.

On the contrary, it is urged that the mortgage lien and priority of Mrs. Mayers were discharged by the decree of foreclosure in Louisiana, the sale under it, and the entry of satisfaction of the mortgage debt; and that this court cannot set aside these judicial proceedings in Louisiana, and restore Mrs. Mayers' claim. But this court may, for purposes of equity, treat the mortgage claim as still subsisting in Mrs. Mayers, though it could not in form set aside the entry of satisfaction in Louisiana. *Starr* v. *Ellis*, 6 Johns. Ch. R. 393. The decree of foreclosure has no operation here *proprio vigore*, nor can the entry of satisfaction have a greater effect than the decree. Both are subject to consideration here in a court of equity, whenever the equitable rights of the parties involved in them are sought to be adjusted, and this to the same extent that a court of equity would interfere, in a proper case, with judicial proceedings in this State. Here the jurisdiction was exercised by the chancery court, at the instance of the complainant, and the court was called upon to settle the equities between the parties; and he has no right to complain that in granting him the relief he sought, the court had regard to the equitable rights of Mrs. Mayers.

Trotter et al. *v.* White.

Another objection taken to the commissioner's report is, that it charges Silas F. Trotter with a stated sum for the hire of the negroes for the year 1846 in the State of Louisiana, when there was no proof whatever before the commissioner showing what should be charged for their hire in that State. This exception seems to be well taken. The record shows no evidence upon the point in question; and, as the account will have to be restated, it will cause no prejudice to the complainant to supply this deficiency.

A third objection urged by the defendant is, that the rates at which Trotter was charged for the hire of the negroes were excessively high, and unwarranted by the evidence. It appears that three witnesses were examined on the part of the complainant, whose testimony sustains the charges of the commissioner, and that four witnesses, examined on the part of the defendants, showed that the charges were too high. We can know nothing of the capacity of these witnesses to form a correct judgment upon the matter in question, except what appears by the record. Much weight might have been given to the testimony of some of the witnesses, and but little weight to that of others, by the opportunity that the commissioner had of judging of their relative weight; and unless some impropriety of conduct is shown, or a clear preponderance of evidence against the account, we cannot say that it is unwarranted by the evidence. This exception is, therefore, not sustained, and the complainant's exception, that the charges for hire were less than the evidence justified, is also not sustained.

On the part of the complainant, several exceptions to the commissioner's report are urged, which we will proceed to consider.

First, it is objected that there is error in not subjecting to the payment of the complainant's claim the slaves Washington, Hamilton, Frances, Dickson, Charles, and Jane. The slaves Washington and Hamilton do not appear to be named in the bill, and though they might be liable to the complainant's claim, they could not be subjected to it without an amendment of the bill. The slaves Frances, Charles, and Jane are not claimed to be embraced in the mortgage to the complainant,

and could not, therefore, be reached by this bill. It is contended, that as the property of Joseph Trotter, an absent defendant, found in the hands of Silas F. Trotter, they are liable to the complainant's debt. But the object of the bill is to foreclose the mortgage in payment of the mortgage debt; and although these slaves are mentioned in the bill, yet they are certainly not liable to such a bill, unless they are embraced in the mortgage, even though Silas F. Trotter may not be entitled to hold them. They must be reached by some other mode than a bill to foreclose the mortgage.

As to the slave Dickson, it appears by the admission of counsel, that he was one of the slaves purchased by Silas F. Trotter in Louisiana, and has been given away by him. No exception, however, seems to have been taken by the complainant to the omission of this slave in the account; but it appears to have been intended to take the exception, and the record sufficiently shows this to justify the notice of it. The value of this slave, to be ascertained by the commissioner by proper evidence, together with the value of his hire up to the time he was given away, and interest on his value from that day, should be charged in the account against Silas F. Trotter.

The last objection insisted on is, that the court refused to hold Silas F. Trotter responsible for those slaves, which have died since they were attached in this suit. After the suit was brought and the slaves taken by attachment, claiming the slaves as his property under the purchase in Louisiana, he gave a bond in pursuance of the terms of the attachment, conditioned " to have them forthcoming to abide the future orders and final decree of this court." Several of the negroes died in his possession pending the suit, and without any special fault on his part. The complainant insists that he is responsible, and should be charged for their value.

We recognize the correctness of the rule, that where a party, without just claim or interest, wrongfully detains the property of another after due demand, such party is responsible for the value of the property if it should be afterwards lost or destroyed by casualty. This is on the ground of wrongful detention of the property, without title or legal interest therein. But the

Trotter et al. *v.* White.

rule cannot be properly applied to a case where the party detaining has an interest in the property equal in right to that of the party demanding. In this case, it appears that the complainant had not the legal title to, or right of possession of, the slaves, but merely held a mortgage lien upon them for the payment of a debt, and that, according to the adjudication of this court, subordinate to the claim of Trotter. The object of the bill was not to have possession delivered to the complainant, for to that he clearly had no right; but to prevent the removal of the slaves by Trotter, who had them in possession, to place them in legal security and have them forthcoming when the rights of the parties should be settled by the litigation. Both the bill and process recognize the right of the defendant to retain possession, by giving bond to have the slaves "forthcoming to abide the further order of the court." If the retention of possession under these circumstances be regarded as a legal disposition and custody, and so we consider it, he was only bound to use such care and vigilance of the slaves as the sheriff would have been bound to use had they remained in his custody. He is to be regarded as occupying the position of the sheriff, and as a legal bailee, so to speak, incurring no liability unless from negligence. *Browning* v. *Hanford*, 5 Hill (N. Y.) 588; Story on Bail. §§ 130, 132. And this, we think, is the extent of his obligation created by the bond. The practice of substituting the custody of the party in possession of property situated like this, under proper security, for that of the sheriff, is convenient and just, as it saves expense, contributes to the health and comfort of the property, when it is slaves, and gives the party in possession the use and benefit of property which may ultimately be determined to be his; and thus the rights of both parties are best protected pending the litigation. But it would not be just to hold the party liable in such cases for loss, not the result of his own neglect.

But, apart from the bond, if the retention of possession as against the claim of the complainant, in this case, is put on the ground of his interest in the property, which had precedence of that of the complainant, as is manifest here, his right of possession is still more justifiable, and consequently his freedom from

liability still more apparent. In that view, he was only bound to take that care of the property which a prudent man would take of his own property ; and here it does not appear that Trotter was guilty of any such neglect as would subject him to the loss. We are, therefore, of opinion, that the decision upon this point by the court below was correct.

Several other points of exception were made in the court below, but are not insisted on here, and are, therefore, not decided.

The decree of the vice-chancellor is reversed, and the cause remanded, with directions to have a new account taken, and for further proceedings thereupon, in conformity with the principles stated in the previous decision, and the views herein stated, with leave to the complainant to amend his bill, so as to embrace the other slaves herein referred to, and not liable under this bill, if, in the opinion of the vice-chancellor, the merits of the case should require it.