L. T. WEBBER, Sheriff, etc. v. EVERMAN & CO.

1. CHANCERY—DECREE AGAINST SHERIFF ON MOTION WITHOUT NOTICE.—Decree against sheriff on motion by a stranger, without notice, for goods seized under sequestration without lawful authority, reversed for want of sufficient notice.

2. SHERIFF—SUMMARY PROCEEDINGS—NOTICE.—The sheriff is an officer of the chancery court, is supposed to be always present in court, and may be dealt with summarily by motion, but all this does not dispense with the service of process and notice.

APPEAL from the chancery court of Washington county. HARMON, Chancellor.

*F. & L. B. Valliant,* for appellant.

1. The decree against appellant, holding him respon-

sible for the loss of property which had come into his hands under the writ of sequestration, without giving him a hearing, and without notice, is void.   Vance v. Connell, Walk. 254 ; Coleman v. Sanders, 5 How. (Miss.) 287 ; Demoss v. Camp, ib. 516 ; Collins v. Terrall, 2 S. & M. 383 ; Garrin v. Hamblin, 11 ib. 219 ; Coleman v. Miss. & Ala. R. R. Co. 5 How. (Miss.) 419 ; Lewis v. Garrett, ib. 434.

2. The party aggrieved is entitled, independently of any statutory relief, to recover only to the extent of his actual injury.   Sedg. on Dam. 506–520 ; State v. Lawrence, 64 N. C. 483 ; Hackett v. Green, 32 Ga. 512 ; Commonwealth v. Van Dyke, 57 Penn. St. 34.

No counsel for appellees.

TARBELL, J.:

The assignments of error present for our consideration the following propositions :

1. The validity of a decree against the sheriff for neglect of official duty in a cause in which he was not a party—such decree having been rendered without notice to the sheriff.

2. Whether, for neglect to sell property in obedience to the order or decree of the court in a proceeding therein pending, the sheriff can be proceeded against by motion ; or whether the party is not driven to his action on the facts in the case.

3. The proceedings against the sheriff being considered otherwise legal and proper, was it lawful to award the payment by the sheriff of the debt found due the complainants from the defendants in the action, without regard to the value of the property seized by him on the writ of sequestration issued therein ?

4. Upon the facts in the cause, it is insisted that the property seized by the sheriff on the writ of sequestration, was not the property of the defendants in the

writ, and, thereupon, the sheriff was not liable to the complainants at all.

It is also alleged for error that the execution against the sheriff includes the costs of the proceeding of Everman & Co. against Johnson.

Except the last, the questions involved are important and interesting; and it is to be regretted that there is no agreement on file for the appellees. The facts are these: Everman & Co. instituted proceedings in the chancery court of Washington county, against W. N. Johnson, to foreclose an agricultural lien, under the act of 1867. Upon the writ of sequestration, the sheriff returned, that he had seized four bales of cotton in the seed, May 16, 1871. On the 25th day of May thereafter, the court ordered a sale of the cotton so seized. Afterwards the sheriff made this further indorsement on the writ of sequestration: "The cotton mentioned above, was placed in the hands of Harry Peters, on the plantation, and was taken from his possession by G. W. Thomas, who claimed the same, without process of law and in disobedience to the order of court, December 20, 1871." On the 19th day of December, 1871, a decree *pro confesso* was taken against Johnson, and a commission was appointed to ascertain and report the amount due complainants. A rule was made on the sheriff on the same day, to show cause why he had not sold the cotton seized by him in obedience to the order of the court, to which he answered, that Mr. Thomas, under claim of ownership, had taken the cotton from his possession. Upon this return no other or further action appears to have been taken, except the arrest and discharge of Thomas. A final decree was rendered on the 20th day of December, 1871, awarding to the complainants $274.20, besides costs, and the sheriff was directed to turn the cotton over to a commissioner named in the order. On the same day, an order was made requiring the sheriff to bring G. W. Thomas before the court, to

answer for taking said cotton from the possession of the
sheriff. The answer of Thomas was made January 22,
1872, to the effect, that he purchased the cotton from
Johnson, in March, 1871, in good faith, and upon the
assurance of Johnson that Everman & Co. had been
fully paid, and that, as such purchaser thereof, he had,
in ignorance of the seizure by the sheriff, converted
the cotton into money. With the answer of Thomas,
the affidavit of Harry Peters was filed, denying that
the sheriff had placed the said cotton in his care.
Thereupon, Thomas was discharged from arrest. On
the 1st day of May, 1872, a motion was entered by the
complainants for a decree against "the sheriff and the
sureties on his bond for the amount of $274.20, the sum
being the amount to which complainants appear to be
entitled, and for which they have taken final decree."
Upon this motion, without service upon the sheriff of
notice thereof, the following decree was rendered : "This
cause coming on to be heard, upon motion of complain-
ants counsel against L. T. Webber, sheriff, and the
court being thereof sufficiently advised, it is ordered by
the court, that the said complainants do have and re-
cover of said L. T. Webber, the sum of $274.20, appear-
ing to be due complainants herein, and that execution
do issue against said L. T. Webber, for said sum of
$274.20." An execution having been issued upon this
decree, including the costs of the proceeding of Ever-
man & Co. against Johnson, amounting to $54.20, and
placed in the hands of the coroner for collection, the
sheriff prosecuted an appeal to have the action of the
chancellor reviewed by this court.

Errors in a writ of *fieri facias* can be corrected by
motion in the court where issued (2 How. (Miss.), 852;
9 S. & M. 216), or the execution will be quashed.

That the sheriff was entitled to notice of the motion,
is well settled. 41 Miss. 49 ; 7 How. (Miss.) 127; 1 S.
& M. 351, 521; 5 How. (Miss.) 434, 584; 3 ib. 641; 7

ib. 85; 5 ib. 516; ib. 688; 44 Miss. 121; ib. 293; 41 Miss. 654; 40 ib. 585; 33 ib. 382; Tarleton v. Cox, 45 ib. 430; Vance v. Courrel, Walk. 254. In the absence of such notice the decree was unauthorized. It is true, as an officer of the court, the sheriff is supposed to be at all times present therein, but it is not that presence which is necessary to authorize a decree or judgment against him as a party to a proceeding in court. Neither was he in court for the purpose of this motion, by virtue of the rule to show cause. That was on the 19th of December, 1871, and was to show cause only. With the arrest and discharge of Thomas, upon the answer of the sheriff to the rule, no further action was had thereon. The motion for the decree was distinct, and not made until May 1, 1872. Jurisdiction of the subject-matter and of the parties is a pre-requisite to a valid judgment or decree. Jurisdiction of the person is obtained by the voluntary appearance of the party, or he must be brought into court by process, to be served in the mode pointed out by statute. In the case at bar, this was wholly neglected, and the decree, so far as the record shows, was altogether *ex parte.* This was error. Jack v. Thompson, 41 Miss. 49; Tarleton v. Cox, *supra.*

As to the authority of the court to proceed against the sheriff by motion, there can be no question This power is conferred upon courts of law by statute. Code, 1871, §§ 227, 228, 229. It is not necessary that these provisions apply, literally, to a court of equity and a court of sequestration. The sheriff is an officer of the chancery court (Code, 1871, § 1277), and herein is ample power, as in every court, to enforce obedience to its orders. Under this general authority to control its officers, the chancery court can proceed in a summary manner in this class of cases. 5 How. (Miss.) 434. The sheriff was ordered to sell property he had before seized, but it having been taken from his possession by a stranger, he was unable to obey this order, and for this

negligence and disobedience he was amenable, *prima facie*, as for contempt, which it was proper for the court to determine on motion.    Lewis v. Garrett, 5 How. (Miss.) 434; 2 Dan. Ch. Pr. 1066, *et seq.*    It will hardly be contended that this was a proper case for an "issue" from chancery to be tried by a jury.    2 Dan. Ch. Pr. 1085, *et seq.*; Iler v. Routh's Heirs, 3 How. (Miss.) 276. Yet this would be substantially the effect, if, in such a case, the proceeding in chancery must be suspended for the determination of the suit at law, to ascertain the liability of the sheriff for the loss of the property. Such a practice would result only in procrastination and injustice.    Fortunately, this is not the law.    In Iler v. Routh's Heirs, *supra*, the court say : " It is, however; a general rule, fully sustained by authority, that the chancellor may, whenever his mind is thrown into a state of doubt and uncertainty as to the preponderance of evidence, send an issue to the country; but he has a right, with certain exceptions, to take upon himself the decision of every question of fact in the cause, and this rests in sound discretion."    This is the English rule.    2 Mod. Ch. 474 ; Dan. Ch. Pr., title, Issue.    For the " exceptions " referred to in Iler v. Routh's Heirs, see the rules in Mod. and Daniel, *supra*.    The case at bar is not within the "exceptions," and therefore to be determined by the chancellor.    And we repeat, that there is no doubt as to the power of a court of chancery, in a case like this, to proceed by motion to determine the liability of the sheriff and its extent.

In serving the sheriff with notice of the motion for a decree against him, there were several objects to be attained :    Not merely compliance with the requirements of positive law, but the administration of justice. The sheriff had a right to be heard on the application for a decree against him, and to afford him the opportunity to do so, notice of the motion was necessary.    If he appeared, he had a right to make, in answer to the

motion, any defense allowed by law. 26 Miss. 88; 38 ib. 473; Sedg. on Dam. (4th ed.) side p. 506, top p. 590, and the numerous cases there cited. Whether he appeared or not, the decree could be, at most, only for the value of the property, to be ascertained by proof. 2 S. & M. 383; 11 ib. 219; 4 ib. 118; State v. Lawrence, 64 N. C. 483; Hackett v. Green, 32 Ga. 512; 57 Penn. 34; Sedg. on Dam. 506, *et seq.* And this rule would not be changed, even if he were "in court" under the order to show cause, and thus had actual notice of the motion. It was error, therefore, to decree the payment by the sheriff of the full amount due from the defendant to the complainants, without reference to the value of the property seized. In a court of law, in this class of cases, the rule as to damages to be awarded against the sheriff is the value of the property, to which extent the plaintiff in execution is held to be damnified

The proposition of the appellant, that, upon the record, he was not liable at all to the complainant, is the very point to be determined by the chancellor upon an application for the decree appealed from, on which the sheriff should have been afforded an opportunity to be heard by the service upon him of notice of such application. We cannot anticipate what facts may be submitted on this point on another hearing. The statements of Thomas and Harry Peters, on the arrest of the former for contempt, might not be the same on the motion against the sheriff. It is probable, also, that on the hearing of that motion much other testimony may be offered. Hence, the proposition is one we are unable to decide at present.

The decree against the sheriff is reversed, and the cause remanded.