CLINTON ATKINSON ET AL. *v.* A. E. FOXWORTH, ADMINIS-
TRATOR, ETC.

1. ATTACHMENT.  *Sureties on claimant's bond.   Cannot assign errors in principal suit.*

    The sureties on a claimant's bond in attachment cannot assign errors in the suit between the attachment creditor and his debtor.   In the collateral suit between the claimant and the attachment creditor, the claimant is bound by the judgment in the principal suit, unless that judgment is void.

2. SAME.   *Bond.   Defective, does not avoid judgment.*

    An attachment bond, with one surety, in which the principal is administrator, which purports to bind only the goods, chattels, rights, credits and personal estate of the intestate in the administrator's hands, and to bind the surety personally, is not a nullity; and such an objection is not fatal to the judgment in attachment, in the collateral suit on the claimant's bond.

3. SURETIES ON CLAIMANT'S BOND IN ATTACHMENT.   *Right to defend.*

    The sureties in claimant's bonds, subjecting themselves to the authority of the court to render judgment against them, are parties to the suit, not in the sense of participating in the litigation between the creditor and claimant on their issue, but to show any reason, good in law, why the bond should not be declared forfeited.

4. SAME.   *How far bound by waiver of claimant.*

    The sureties on a claimant's bond are sponsors for the claimant; and, if he neglects to take advantage of the failure of the plaintiff in attachment to make up the issue to try the right of property, and then withdraws his claim and suffers judgment, the sureties are bound thereby, and cannot defeat their liability, on the ground that they were discharged by the failure to make up the issue.

5. SAME.   *Discharge from obligation.   When and how availed of.*

    The obligation of the claimant is to redeliver the property to the sheriff. If that becomes impossible by reason of matter occurring after the bond is given, it is a discharge from the obligation.   It is not necessary for the sureties to present the matter by formal plea *puis darrein continuance.*   It may be done by motion, on which the court may direct a formal inquiry by jury, or itself hear testimony.

6. SAME.   *Death of animals bonded.*

    The sureties, when it is proposed to enter judgment against them, on the claimant's bond in attachment, may show that it was impossible to retain animals bonded, because they died without the fault or negligence of the claimant.   But the plaintiff in attachment could defeat the defence by showing that the obligors had disposed of the animals, and thereby become unable to redeliver them.

7. FRAUD IN CONDUCT OF SUIT. *Cannot be reached by motion.*

Fraud in the conduct of an attachment suit, in that the plaintiff in attachment, and the claimant, who was insolvent, colluded to have judgment on the claimant's bond, so that the sureties would be com-·pelled to pay it, is not a fit subject for investigation, on motion of the sureties to set aside the judgment.

ERROR to the Circuit Court of Marion County.

Hon. GREEN C. CHANDLER, Judge.

On 28th June, 1869, A. E. Foxworth, administrator of Elizabeth Foxworth, sued out *scire facias* to revive in his name a judgment in favor of his intestate, against Elisha Magee and Harris Pope.

On 24th September, 1869, he sued out a writ of attachment in aid of the *scire facias*, which was levied on seven mules, eight horses and mares, and other property, valued separately.

The attachment-bond was in the following words : —

"STATE OF MISSISSIPPI,⎱
    Marion County.     ⎰

"Know all men by these presents, that we, A. E. Foxworth, administrator of the estate of Elizabeth Foxworth, deceased, and B. Taylor, are held and firmly bound unto Elisha Magee and Harris Pope in the penal sum of $2,200, for the payment of which, well and truly to be made, the said administrator binds the goods, chattels, rights, credits and personal estate of his said intestate in his hands to be administered, and the said B. Taylor binds himself individually, his heirs, executors and administrators, jointly and severally, firmly by these presents.

"Witness our hands and seals, this twenty-fourth day of September, 1869."

Then followed the condition.

A motion by the defendants to dismiss the attachment, because the bond was defective, was overruled, and the defendants excepted. There was also a plea to the *scire facias*, demurrer to plea sustained, and the judgment was revived. At the same term, Mary Magee claimed three of the mares and a horse ; and John, Charles and Daniel Magee respectively claimed other portions of the property levied on. The claimants jointly executed a bond, with sureties, for the forthcoming of the prop-

erty.  At the April Term of court, 1871, Mary Magee, the claimant, appeared, and moved to dismiss the cause as to her, because no issue had been made up and tendered by the plaintiff in attachment to try the right of property on the claim interposed by her.  This motion was heard by the court on the papers in the case and testimony offered, and overruled, and a bill of exceptions taken.  At the same term Elisha Magee pleaded in abatement of the writ of attachment, and there was a mistrial on said plea.

Subsequently, at the same term, on motion of the plaintiff in attachment, the claimants were required to give new bonds ; and Mary Magee gave a new claimant's bond, with Clinton Atkinson and J. N. Atkinson as sureties.  An issue was then directed to be made up.  A declaration in debt on the judgment was filed by the plaintiff, at September Term, 1874, and a summons issued thereon, and judgment was thereon rendered.

The defendants in attachment having withdrawn the plea in abatement of the writ, there was, on the 24th March, 1875, a judgment *quod recuperet* against the defendants, with an order condemning the attached property.  Afterwards, on the same day, substantially the following judgment was rendered : Came the plaintiff, by attorney, and suggested the death of Mary Magee, claimant, and the appointment of Elisha Magee as her administrator.  It is therefore ordered that the suit be revived in the name of said Elisha Magee, administrator, &c. And thereupon came the administrator of the claimant and the plaintiff in attachment, and the plaintiff stated to the court that the sureties on the claimant's bond have become insolvent and insufficient ; and moves the court that the claimant be required to give additional sureties thereon, or execute a new bond ; and the claimant's administrator confessed said motion.  The motion is therefore sustained, and said administrator required to give additional sureties on said bond, or give a new bond ; and he refused in open court to give additional sureties on said bond or give a new bond, and in open court withdrew the claim of property, and refused further to prosecute the same.  Thereupon came the sureties on the claimant's bond, and moved the court to discharge the levy of the attachment, and to be discharged from suretyship, because by

default of the plaintiff in attachment the issue between the said plaintiff and the claimant was not made up ; which said motion the 'court refused to entertain, because the sureties were not parties to the suit. And said sureties moved the court to supersede the levy of the attachment, because, without any fault of the claimant, said property has perished; which is not entertained by the court. It is therefore considered by the court that said claim of property be not sustained, and that the property attached and claimed by the said claimant be condemned to be sold under the attachment in this cause ; but because the value of said property is not known to the court, came a jury, &c.

The jury assessed the value of the property claimed at $600, and certified the claim was made for fraudulent purposes and purposes of delay. And thereupon the court entered judgment for the plaintiff, against the administrator of the claimant and Clinton Atkinson and J. N. Atkinson, sureties on the claimant's bond, for the mares and horse, if to be had, and if not, for the sum of $600 and costs of suit.

The sureties on the claimant's bond took three bills of exceptions, from the first two of which it appears that the reason why the court would not entertain their motions aforesaid was because they were not parties to the suit. The last bill of exceptions shows that the sureties moved to set aside and vacate the judgment, —

" 1. Because the mares and horse had died in the hands of the claimant, after being bonded; without fault of the claimant.

" 2. Because the claimant, who is insolvent, and the plaintiff in attachment had colluded together to defraud the sureties and subject them to the payment of the value of said property.

" 3. That a claim of one Leonidas Pittman for said mares and horse is still pending and undetermined."

On the hearing of said motion, the sureties introduced the judgment aforesaid against them, and then offered to prove each of the other allegations and causes assigned in said motion ; but, the plaintiff objecting, the court declined to hear the testimony, and overruled the motion.

Whereupon the sureties brought the case to this court, and assign for error, —

1. The court erred in overruling the motion to dismiss the attachment for want of a proper bond.

2. In overruling the motion of the claimant to be discharged for default of the plaintiff to tender issue on the claim.

3. In refusing to entertain the motions of the sureties to be discharged, because the property had perished, and because the plaintiff had failed to tender issue on the claim.

4. In refusing to entertain the motion of the sureties to set aside the judgment, or hear the evidence thereon offered.

5. In rendering judgment, after the plaintiff had abandoned the proceeding by filing a declaration in debt.

*Chrisman & Thompson* and *T. S. Ford*, for the plaintiffs in error.

1. As to the right of the sureties to appeal and to complain of any error committed by the court below, see 4 McLean, 577; 45 Vt. 110; Code 1871, § 410.

2. The levy should have been discharged on the claimant's motion, no issue having been tendered, and three terms of the court having passed. 39 Miss. 338; Code 1871, § 860; 45 Miss. 353.

3. The plaintiff abandoned his attachment in aid of his *scire facias*, by taking a judgment in debt on his declaration based on the original judgment. The old was merged in the new. By what process could he engraft his attachment in aid of a *scire facias* to revive the old judgment upon this new judgment rendered in debt?

4. The motion of the claimant's sureties to be discharged because no issue was tendered should have been sustained: they were directly interested. Code 1871, § 860.

5. The court below should have entertained the motion of the sureties to be discharged, because, as they offered to show, the animals for the return of which they were bound were dead, without fault of the claimant. 45 Miss. 556; 44 Miss. 270; 7 Cowen, 280; 11 Ala. 801; Drake on Attachment, 341.

6. The judgment against the sureties itself is erroneous, apparent on its face. (1.) There was a writ of inquiry, professedly to ascertain the value of the property; and yet the jury find that the claim was made for fraudulent purposes. 6 How. (Miss.) 382. No evidence of fraud was legitimate on this in-

quiry. (2.) The jury assess the value of the property only in
bulk. Code 1871, § 1448 ; 40 Miss. 369 ; 39 Miss. 357. (3.)
The amount of the plaintiff's debt is not disclosed by the
judgment. 45 Miss. 553.

7. The court should have set aside the judgment on appli-
cation of the sureties. They offered to show that, in this
same case, there was another claimant of the same property
besides their principal, and that the judgment was rendered by
collusion and fraud between the plaintiff and the claimant.
4 S. & M. 153 ; 7 How. 47 ; 50 Miss. 419–427 ; 7 Cowen, 280 ;
Freeman on Judg. §§ 90–99.

*B. Taylor*, for the defendant in error.

1. A suit by *scire facias* is a " *suit* " within the meaning of
§ 1482 of Rev. Code of 1871. *Potter* v. *Titcomb*, 13 Me. 36 ;
*Greenway* v. *Dare*, 6 N. J. L. (1 Halst.) 305 ; *Gonnigal* v. *Smith*,
6 Johns. (N. Y.) 106.

2. The plea in abatement, traversing the grounds on which
the attachment was sued out, operated as a waiver of all ob-
jections to the affidavit, bond and writ of attachment.

3. The withdrawal of the plea in abatement was an aban-
donment of all defence to the attachment.

4. The withdrawal of the claimant's claim of property was
a waiver and abandonment of all defences against the plaintiff
in attachment ; and the sureties were not parties to the claim-
ant's issue, and could not defend for the claimant, or set up any
defence after he had withdrawn his defence. A surety on a
claimant's bond cannot intermeddle with the issue between the
plaintiff in attachment and the claimant ; the sureties are not
*parties* until *after verdict* against the claimant ; nor can they
interpose any defence *for themselves* until after verdict, when
judgment is about to be rendered against them as sureties ;
they can then interpose any defence which has arisen since the
execution of the bond, which may operate as a discharge of
the bond as to them. This defence must be interposed by
plea *puis darrein continuance*. *Whitfield* v. *Whitfield*, 44 Miss.
254.

5. The sureties are estopped by the recitals in their bond
from denying the issuance, validity or levy of the attachment.

6. The question of the alleged *collusive* recovery against

the claimant can only be adjudicated in a court of equity. A court of law cannot try this question.

7. The assessment of the property in bulk was not error, because the plaintiffs in error showed that the animals were dead and could not be returned.

8. The death of the animals was no defence. The principal in the bond having waived this defence, the sureties are bound by this waiver.

9. The omission of the plaintiff in attachment to take issue against the claimant was cured by the withdrawal of the claim of the claimant by him. The withdrawal of the claim was an abandonment of it, and of course judgment followed on the claimant's bond.

Simrall, C. J., delivered the opinion of the court.

It is proper to state *in limine* that this writ of error is prosecuted by the Messrs. Atkinson, the sureties on the claimant's bond, and that they cannot assign error in the suit between the attachment creditor and his debtors. Although errors and irregularities might abound in those proceedings which would compel a reversal of the judgment on writ of error by the defendant in attachment, yet in the collateral suit between the claimant and the attachment creditor, he is bound by the judgment in the principal suit, unless that judgment be void. We do not think the objection taken to the attachment bond is fatal to the judgment. The bond is not a nullity.

Was it error to overrule the motion of the sureties to be discharged, because the claimant's issue had not been made up? This error the circuit judge declined to consider, because, as stated in the order overruling the motion, the sureties on the claimant's bond were not parties to that suit.

The statutory proceeding, where personal property has been seized under attachment or execution, is a suit; as much so as where the claim to property is preferred by replevin. The immediate parties are the creditor and the claimant, but the sureties on the bond are so far parties as that they submit themselves to the jurisdiction of the court for all the purposes of judgment on their obligation. The condition is, " for the payment to the creditor of all such damages as may be awarded

against the claimant, in case his claim shall not be sustained, . . . and that he will well and truly deliver the same property to the sheriff or other officer, if the claim thereto shall be determined against the claimant." If the verdict shall be for the plaintiff on issue joined, or on inquiry by default, the judgment shall be jointly against the claimant and his sureties. Code, § 862.

The point at which the sureties become interested is when the court is about to adjudge against them on the bond. We held at this term, in *Jones* v. *Coker*, *ante*, 195, that the sureties in the appeal bond from the judgment of the justice of the peace to the Circuit Court must interpose their discharge in bankruptcy, acquired after the execution of the bond, in the Circuit Court; and if they did not, they could not be relieved from the judgment in chancery. The conclusion was placed on the ground that the sureties were so far parties as that " they might be heard in their own protection " in the Circuit Court.

Manifestly, if the sureties could not set up their discharge in the Circuit Court, their right would have been clear in a court of equity.

The principle is, that the sureties in that class of bonds, where the obligors subject themselves to the authority of a court to render judgment against them, are parties, not in the sense of participating in the litigation between the creditor and the claimant on their issue, but to show any reason, good in law, why their bond should not be declared forfeited.

The sureties claim the benefit of § 860 of the Code. If the issue be not made up at the term to which the execution shall be returnable, the court shall discharge the claimant from his bond. Sect. 1456 of the attachment law directs all claimants' issues to conform to the statute in such cases provided, when the property has been seized under *fi. fa.* The " claim " in all respects is governed by that law.

The history of this feature of the case is this: In the fall of 1869 the levy was made; the property was claimed by several parties, who, with sureties, gave but one bond. No issue was tendered by the attaching creditor whilst this bond was operative. At the April Term, 1871, Mary Magee, the claimant,

moved to be discharged from her bond, because no issue had been tendered or made up. That motion was overruled; and, at the same term, the claimant was required to give a new bond, which was done, with the Messrs. Atkinson as sureties. The court also directed that an issue should be made up at that term. The case was continued from term to term, until 1875. One mistrial having occurred on the plea in abatement to the attachment, that plea was abandoned; when, finally, the claimant's personal representative (she having in the mean time died) withdrew her claim; thereupon the sureties appealed to the court by motion to discharge them, because no issue had been made up.

These sureties incurred liability for their principal after the claimant's motion, in April, 1871, had been denied. If there had been an omission, from that time until the sureties submitted their motion to make up the issue, can they complain, or are they bound by the action or non-action of their principal? If the claimant had joined issue with the creditor at any term after April, 1871, that would have been a waiver of his right to a discharge from his bond. If he had gone to trial on such issue and lost, he could not escape judgment, because the issue was not tendered in time. What he would not be permitted to do, his sureties cannot. They are sponsors for him; and when his liability on the bond is fixed, so is theirs. They undertake that he shall perform his contract. The consideration inures to the principal, and not to them. If the principal waives a right, or by his acts or declarations puts himself under an estoppel, they are bound by his conduct. *Montgomery* v. *Dillingham*, 3 S. & M. 647; *Dillingham* v. *Jenkins*, 7 S. & M. 479. If the principal does not claim a discharge from the bond, for a failure of the creditor to tender issue, or if the writ of inquiry is awarded for not accepting issue, the surety must abide the same consequences that he incurs. In the one case, a right is waived; in the other, the claim is abandoned. It is certainly in the power of a claimant to withdraw his claim, and decline, in the language of the bond, "to prosecute it with effect," just as the creditor could dismiss his attachment or discharge the levy. That is what was done in this case. Then occurred the condition upon which judgment

should go against the obligors, for return of the property or its value. We think there was no error in overruling that motion.

But the application by the sureties to show that it was impossible to return the property, because the animals, or some of them, had died, ought to have been entertained ; that is, if the death was without the fault or negligence of the claimant. The attaching creditor might defeat that defence by showing that the obligors, or some of them, had disposed of the animals, and thereby become unable to redeliver them. The principal duty of the obligors was to redeliver the property to the sheriff. If that became impossible, it was a discharge from the obligation, by reason of matter occurring after it was given ; and it was preferred at the first opportunity, when the sureties could have been heard. *Whitfield* v. *Whitfield*, 44 Miss. 253 ; *Trotter* v. *White*, 26 Miss. 93.

Nor do we think that it was necessary, in this statutory mode of procedure, to have presented the matter by formal plea *puis darrein continuance.* It was entirely competent for the court to have directed a formal inquiry by a jury. If that was not insisted upon, it might have heard testimony on the motion.

The judgment will be reversed, and cause remanded for a writ of inquiry to be awarded to assess the separate value of each animal. But before judgment on the verdict, the plaintiffs in error should have an opportunity to show that they cannot return the animals, because of their death, or the death of some of them, unless before their alleged death the claimant or the plaintiffs in error had disposed of the property, or some part of it, so that it could not be returned.

We do not think that the fraud alleged in the motion, in the conduct of the suit, is a fit subject for investigation in that informal manner.                 *Judgment reversed.*