# TAYLOR

*v.*

# THE GIRARD LIFE INSURANCE, ANNUITY AND TRUST COMPANY.

DEEDS OF TRUST; FORECLOSURE; REDEMPTION DECREE; TRUSTEES' SALE, VACATION OF; DEED OF TRUST LIEN.

1. A suit in equity was brought to foreclose a deed of trust for the non-payment of overdue notes secured thereby, and of money advanced for taxes and insurance, in accordance with its provisions. The decree passed, set forth the various items of debt due under the deed of trust, and provided that unless the same were paid, the property included in the deed should be sold. Error being assigned that the decree was invalid, in that it did not "declare the fact, nature or extent of the default which constituted the breach of the conditions of the deed of trust," nor find the amount due thereunder : *Held,* That the decree was a sufficient finding that the money was due, and that its non-payment was a breach of the conditions of the deed of trust.

2. In view of the fact that the instrument sought to be foreclosed was a deed of trust and not a mortgage, and of the particular circumstances of the case as stated, it was immaterial that the decree failed to fix a definite time within which the debtor might redeem.

3. In such a case, it is discretionary with the trial court whether or not to refer the case to the auditor, to ascertain the amount due under the deed of trust.

4. The effect of a decree vacating a trustees' sale under a deed of trust, is to restore the parties interested to the positions occupied by them before the sale was made.

5. The lien of a deed of trust extends to money paid by the purchaser at a deed of trust sale for taxes on the property, pending litigation, which results in the vacation of the sale.

No. 61.   Submitted June 16, 1893.—Decided September 22, 1893.

HEARING on appeal by one of the defendants from a decree of the Supreme Court of the District of Columbia, holding an equity term, in a suit brought to foreclose a deed of trust. *Affirmed.*

THE COURT in its opinion stated the case as follows:

On the 20th day of July, 1885, George Taylor borrowed of the Girard Life Insurance, Annuity and Trust Company

$60,000, for which he gave his note, payable three years after date, with interest at the rate of six per cent. per annum until paid; he also gave six coupon notes, for the three years' interest, for $1,800 each, payable respectively in six, twelve, eighteen, twenty-four, thirty, and thirty-six months from date, with interest at six per cent. from maturity until paid.

To secure these notes he executed a deed of trust, in which he was joined by his wife, Eleanor Taylor, to the defendants Tyler and Rutherford, trustees, whereby he conveyed certain lots on Vermont avenue, in the city of Washington, with buildings thereon.

It was stipulated in the trust deed that Taylor should pay all the taxes assessed against the premises, as they accrued, and should keep the buildings insured for the benefit of the holder of the notes in the sum of at least $27,000 until the debt should be paid. It was further provided that if Taylor should make default with respect to the taxes and insurance, any sums advanced by the holder of the notes on that account should bear six per cent. interest until paid and become an additional charge upon the property. The trust deed contains the usual form of power of sale in the event of default on the part of Taylor in the payment of the notes, or any one of them, as they matured, or in the payment of any sums advanced on account of the taxes and insurance, upon demand therefor.

The complainant filed its bill for foreclosure of said lien, March 25, 1891, in the Supreme Court of the District of Columbia, making George Taylor and his wife Eleanor, and the trustees, Tyler and Rutherford, parties defendant.

The foregoing facts with respect to the notes and trust deed were alleged in the bill, and it was charged that the principal note for $60,000 and the last interest note for $1,800, payable thirty-six months from date, were due and unpaid.

Complainant further alleged the payment of taxes on the premises for several years, amounting to about $3,123.22, as

well as about $155 for insurance, and the failure of defendant to pay the same upon demand.

Defendants George and Eleanor Taylor answered, admitting the loan of the money, the execution of the trust deed and notes, and their non-payment by George Taylor, but denied the payment of the taxes and insurance by complainant. They also denied that plaintiff was the owner of the notes sued on, and alleged that they had been paid to it by W. B. Moses, in consideration of the conveyance of the premises to him by the said trustees; and also that the taxes and insurance premiums had been paid by said Moses on his own account. Wherefore complainants had no right to enforce the trust, &c. By amendment to the bill, January 5, 1892, Chas. C. Cole was made a party defendant, upon the ground that since the execution of the notes and trust deed the said George and Eleanor Taylor had conveyed the premises to him, subject to complainant's rights.

Cole answered, admitting the truth of the allegations of the bill, and alleged that the premises had been conveyed to him in trust by Taylor and wife to secure $10,000 advanced to pay off certain judgments and other claims against Taylor, under a contract which was made an exhibit to the answer. Cole also alleged that the premises were sold on December 7, 1888, by the trustees to one W. B. Moses, and that he assigned the said contract and lien to the said W. B. Moses, who used the same in the settlement made by him with the trustees for the purchase money under the sale. He further alleged that the sale to Moses was afterwards set aside by the Supreme Court of the District, in general term, by reason whereof the said contract had been revived, and all the parties placed *in statu quo*.

W. B. Moses became a party defendant upon his own petition, and filed an answer March 16, 1892, in which he also admitted the allegations of the bill. He further alleged that he was the owner of certain judgments against George Taylor which constituted liens on his equity of redemption in said premises. He also joined in the allegations of de-

fendant Cole respecting the contract between him and George Taylor, its endorsement to him and his ownership thereof, and alleged that the property was worth more than the debt of complainant, and that the only security he had for the payment of his claims was the right to have them charged upon the equity of redemption of George Taylor therein. He joined in the prayer of the bill for the sale of the premises and asked that in the application of the proceeds his equities might be protected.

It appears from the evidence that upon breach of the conditions of the trust deed, the trustees, on December 7, 1888, sold the property at public sale to the said W. B. Moses, for the sum of $97,800. In part payment of this purchase price, complainant loaned Moses $65,000, for which he gave his note, secured by deed of trust on the premises, under date of May 3, 1889; that is to say, it received his note for that sum as so much cash to be credited to the trustees in their settlement.

Moses being the owner of certain judgments, as alleged in his answer, took steps to have them allowed also as credits upon the purchase. Taylor filed a bill to set aside the sale made by the trustees, which was dismissed in the special term, but upon appeal to the general term, this decree was reversed and the sale was annulled. Pending this litigation, the payments were made on account of the taxes and insurance premiums, at the dates and in the amounts set forth in the bill, by complainant and Moses respectively. Of the proceeds of the sale made to Moses, $71,236.23 were due complainant, and in payment complainant received the $65,-000 note and $6,236.23, which was paid in cash by Moses, who also paid to complainant the interest accruing on his note between the time of its execution and the time the sale was set aside, which was about two years. In this connection, it may be remarked, that the appeal taken by Taylor from the dismissal of his bill to annul the sale did not operate as a *supersedeas*. It seems that the notes given by Taylor to complainant have remained in its possession uncancelled,

and it was understood that in the event of the sale being set aside, Moses would be entitled to be reimbursed for money expended by him in paying taxes and for insurance.

Moses seems to have acted throughout upon this understanding, and has permitted these payments to be treated as if made for complainant's use and on its account, relying upon complainant, and not upon the court, to protect his rights in the premises.

On March 18, 1892, the court, in special term, entered a decree to the effect that, " unless the defendant George Taylor shall pay to the complainant upon the claims set forth in the bill in this case the following sums of money, to-wit "— here are stated the several items of debt as set forth in the bill—" the real estate mentioned in the proceedings be sold." The decree appoints Walter H. Smith and Nathaniel Wilson, solicitors respectively for complainant and defendant Taylor, trustees to make the sale, and directs them to pay all costs and commissions out of the proceeds, and pay the surplus, if any, into court, concluding with the recital, " all questions as to the application of the residue of the purchase money are reserved for the further order of the court."

The defendant, George Taylor, appealed from this decree to the general term, and the same not having been decided when the act creating this court took effect, has been regularly transferred to it as provided therein.

*Mr. Nathaniel Wilson* for the appellants :

1. The decree appealed from is erroneous and invalid, in that it does not declare the fact, nature, or extent of the default which constituted the breach of the conditions of the deed of trust, nor does it find or adjudge the amount due under the terms and conditions of the deed of trust. *Chicago & Vincennes R. R. Co.* v. *Fosdick,* 106 U. S., 47 ; *Howell* v. *Western R. R. Co.,* 94 U. S., 463 ; *Clark* v. *Reyburn,* 8 Wall., 318.

2. There should have been a reference to the auditor to determine the amount due.   Daniel's Ch. Pr., 3d ed. 1016 and

2224. The bill of complaint prays "to have an account taken." This made a reference to the auditor proper and necessary. Md. act 1785, Ch. 72, Sec. 17; Mackey's Practice, p. 432; Boone on Mortgages, 8th ed., 183; Jones on Mortgages, 1467.

3. No competent proof was before the court in respect of the note or mortgage. Jones on Mortgages, Sec. 1469; *Dowden* v. *Wilson*, 71 Ill., 485; Boone on Mortgages, Sec. 182.

*Mr. Walter H. Smith* for the appellee, the Insurance Co.

*Mr. W. L. Cole* for the appellees, Moses and Cole :

The setting aside of the sale reinstated the trust and all parties to their original rights and liabilities, and entitled the purchaser to a return of his purchase money, and disbursements for the benefit of the parties to the original deed of trust or mortgage.   2 Jones on Mortg., § 1861 ; *Trotter* v. *White*, 26 Miss., 88 ; *Fort* v. *Roush*, 104 U. S., 142 ; *Stackpole* v. *Robbins*, 47 Barb., 212 ; S. C. (affirmed) 48 N. Y., 665.

Mr. Justice SHEPARD delivered the opinion of the Court :

Several errors have been assigned, which will be considered in the order of their presentation on the argument:

1. It is objected that "the decree is erroneous and invalid in that it does not declare the fact, nature or extent of the default which constituted the breach of the conditions of the deed of trust, nor does it find or adjudge the amount due under the terms and conditions of the deed of trust." The authorities cited in support of this contention, viz., *Railroad Co.* v. *Fosdick*, 106 U. S., 47 ; *Howell* v. *Western R. R. Co.*, 94 U. S., 463; *Clark* v. *Reyburn*, 8 Wall., 318, do not sustain its application to this case; the cases are different in several essential particulars.

In the first of these cases, it is said that it is "indispensable in such a decree that there should be declared the fact, nature and extent of the default which constituted the breach of the

condition of the mortgage, and which justified the complainant in filing his bill to foreclose it, and the amount due on account thereof, which, with any further sums subsequently accruing and having become due, according to the terms of the security, the mortgagor is required to pay within a reasonable time to be fixed by the court, and which, if not paid, a sale of the mortgaged premises is directed." The decree, however, was not reversed merely because of its failure to recite these particulars, and the expression of the court must be taken with respect to the facts of the case before it. It was a bill to foreclose a railway mortgage securing a series of bonds, not due for many years, unless matured by default in certain matters respecting the payment of the interest; and the right to foreclose therefor was in certain respects dependent upon the action of a majority of the bondholders. The situation was further complicated by the fact that a number of the bondholders had waived the default in the payment of their interest by an agreement respecting the same made with the railway company. Upon this state of facts, it was considered essential that the existence of all the facts necessary to the right of foreclosure and sale should be specially ascertained and set forth in the decree.

In *Clark* v. *Reyburn*, there had been a regular foreclosure of the mortgage as to the mortgagor, Clark, and sale thereunder, and this bill was filed against Mrs. Clark and a trustee for her benefit, who were not parties to the original bill, for a strict foreclosure of the equity of redemption, which the trustee held for her under a deed from her husband, the mortgagor. Respecting the decree appealed from, the court said: " The decree does not find either the fact or the amount of the alleged indebtedness. It is silent upon the subject. The record shows no proceeding in relation to it. No time was given either to Mrs. Clark or her trustee within which to pay and redeem. The foreclosure was unconditional, and made absolute at once "; and for these reasons it was reversed. 8 Wall., 321.

In *Howell* v. *West. R. R. Co.*, the bill was to foreclose a railway mortgage, which by its terms matured the long-time bonds secured thereby, upon default in the payment of interest. The court held that the stipulation by which the bonds were matured was void because in conflict with the law by which their issuance was authorized, and that all that was due plaintiff was his overdue and unpaid interest, for which "he had a right to a decree which will ascertain the sum so due and give the company a reasonable time to pay it, say ninety days, or six months, or until the next term of the court, in the discretion of that court."

This is a simple suit to foreclose an ordinary mortgage lien for the non-payment of notes long since due by their express terms, and of money advanced for taxes and insurance in accordance with the provisions of the deed of trust. There was no issue as to the notes and the amounts and dates of payment of the several items for taxes and insurance. The decree sets out the amounts due on these several accounts, with their maturity, and the rate of interest each shall bear, with perfect accuracy, and we think it is a sufficient finding that the money is due and its non-payment a breach of the condition of the deed of trust. It is true, no special time was fixed within which defendant might redeem, but he had until the actual and final closing of the sale to do so if he desired. It was said in *Railroad Co.* v. *Fosdick*, 106 U. S., 69, that "the ordinary period fixed for redemption ought to be varied so as to be reasonable, according to the discretion of the court, and the particular circumstances of the case." This is not the case of the foreclosure of an ordinary mortgage. The instrument signed by the defendants expressly empowered the trustees to sell the property at public sale, upon ten days' notice only, in case of default in the payment of the notes secured thereby. The decree appealed from requires the trustees appointed therein to give at least fifteen days' notice of the time and place of sale, and provides that it shall be made for one-third cash, and the remainder payable in one and two years.

We cannot say, under the particular circumstances of this case, in which the collection of a confessedly just debt has been greatly delayed, that the court erred in failing to fix some definite time in the future for the payment of the sums due, before which the sale could not be made.

2. The second error assigned is that "there should have been a reference to the auditor to determine the amount due."

It was the duty of the court to ascertain and adjudge the amount due. In its discharge it had the power to call to its aid the services of the auditor, but this was a matter entirely within its discretion. When the court to whom such a cause is submitted sees proper to ascertain the amount for which judgment shall be rendered without this aid, we do not see any possible ground for complaint.

3. The action of the court in allowing complainant to recover the sums of money paid by W. B. Moses on account of taxes while the validity of the sale to him was in litigation, is the subject of the third error assigned. It is claimed that these payments were not covered by the deed of trust because the lien of that instrument is expressly limited to sums for that purpose advanced only by the "holder of the notes." The effect of the decree vacating the sale of the trustees to Moses was to restore the parties to the precise position occupied by them before it was made. The *status quo* was completely restored. *Trotter* v. *White*, 26 Miss., 88 ; *Stackpole* v. *Robbins*, 48 N. Y., 665 ; *Fort* v. *Roush*, 104 U. S., 142.

The money paid by Moses, during the time that he claimed ownership under his purchase, was for the benefit of the estate. Had he not relied on complainant to save him harmless, but appealed to the court for relief instead, it would not be denied him simply because he was not technically the "holder of the notes," recited in the trust deed. These notes were in abeyance; they had not been cancelled or delivered to Taylor. Had they been, the vacation of the sale, on Taylor's application, would at once have worked their restoration.

It seems, however, that on account of the uncertainty attending the confirmation of the sale, it was understood that

Moses would be reimbursed in the event it should be vacated. In view of this, he was acting in the interest of complainant and for its benefit. The fact, that if not already reimbursed, he has preferred to rely upon complainant for relief, rather than ask it of the court, is no concern of the defendant Taylor, and cannot be used by him to prevent a recovery. Moses is before the court; the decree binds him and protects Taylor against a possible double recovery; there is nothing of which Taylor can complain.

There being no reversible error in the proceedings below, the decree must be

*Affirmed.*