## Mars *v.* Hendon.

(Division B.   Jan. 18, 1937.)

[171 So. 880.   No. 32506.]

(Division B.   March 15, 1937.)

[173 So. 286.   No. 32506.]

W. T. Weir and James M. Mars, both of Philadelphia, for appellant.

**W. T. Weir** and **James M. Mars,** both of Philadelphia, for appellant on suggestion of error.

Nate S. Williamson, of Meridian, for appellee.

164

A. B. McCraw, of Philadelphia, and Nate S. William-son, of Meridian, for appellee, on suggestion of error.

**Ethridge, P. J.,** delivered the opinion of the court.

The appellant, W. H. Mars, sued out a writ of replevin in a justice of the peace court, making affidavit that W.

T. Hendon, appellee, had taken from his possession in the last 30 days, ''one pair of black mare mules,'' one 14 years old, valued at $95, and the other 13 years old, valued at $100, the property of the affiant, in District No. 1 for the election of justices of the peace, and that appellant was entitled to possession thereof. A writ of replevin was accordingly issued by the justice of the peace, the property described taken into possession and delivered to appellant, he having given bond for same under said affidavit. In the justice of the peace court judgment was rendered in favor of the appellee. From this judgment, an appeal was taken by appellant to the circuit court where the case was tried de novo, resulting in a verdict for appellee, Hendon, in which the mules were valued, one at $125, and the other at $115, and damages were awarded for $200, from which judgment this appeal is prosecuted.

It appears from the evidence that the mule which was assessed at $125 in the circuit court died shortly after the suing out of the writ of replevin.

Witnesses for the appellant, including himself, tended to show that the mules belonged to W. H. Mars, and that he had rented them to Hendon in the year 1930, and from year to year from that time until shortly before suing out the writ of replevin, when Mars went to Hendon's premises and demanded the mules. Possession thereof was, by Hendon, refused, he claiming that he had purchased and paid for them, and, thereupon, the writ of replevin was sued out.

W. H. Mars, appellant, testified that he believed the mules were legally in his possession after he made demand for them, although he did not have physical possession thereof from 1930 to 1935.

It was shown that Hendon had the mules assessed to him, and that he paid taxes on a pair of mules.

Appellant claims that, while Hendon had paid the taxes on said mules, he had agreed to do so, and that

the amount of the taxes was to be abated from the rent value of the mules, which appears to have been $30 per year each.

Hendon, appellee, claims that he bought the mules from Mars; that he had sold him a tract of land upon which he had paid $600, but that Mars owed appellee considerably more than the agreed price of the mules, which Hendon claims is $125 and $115; that he had never owed Mars anything on the mules, and that he had traded with Mars in his store, which paid some part of the purchase price of the land.

There were some witnesses to sustain the appellant's theory, and some to sustain that of the appellee, and while one witness, in favor of the appellant, was on the stand, he was asked by appellee's attorney if Mars was not under indictment for perjury committed in the trial of this case in the justice of the peace court. The witness stated that he did not know anything about that. Objection was made and sustained to this question, and subsequently, when Mars was on the stand, he was asked if he was not under indictment for perjury, for false swearing in the case in the justice of the peace court trial, and he answered that he was, as he considered it, very unjustly so; and he did not think it was fair to bring that matter up in this trial to prejudice him before the jury. No motion was then made for a mistrial, or to discharge the jury because of said matter.

From this statement of the case, it will be seen that one of the mules died, and there is no proof in the record to show that its death was occasioned by anything done by appellant, Mars; that the mule was, apparently, in good condition, and died so far as the evidence shows, without any fault of Mars.

A question is therefore presented as to whether Mars is liable for the value of the mule on his forthcoming bond, or whether he was excused by an act of God.

In Irion v. Hume, 50 Miss. 419, it is said that, "At common law, when the condition of the bond is possible at the time of making it and, before the same can be performed, becomes impossible by the act of God, or of the law or the obligee, then the obligation is saved. If the condition is impossible at the time of making the bond, the condition is lost and the bond becomes absolute."

In Atkinson v. Foxworth, 53 Miss. 741, it was held that, "The obligation of the claimant is to redeliver the property to the sheriff. If that becomes impossible by reason of matter occurring after the bond is given, it is a discharge from the obligation. It is not necessary for the sureties to present the matter by formal plea puis darrein continuance. It may be done by motion, on which the court may direct a formal inquiry by jury, or itself hear testimony."

These decisions of our own court show that an act of God is recognized, by the common law, in this state, as freeing a party from the consequences of an obligation.

In George v. Hewlett, 70 Miss. 1, 12 So. 855, 35 Am. St. Rep. 626, this court held that property lost by fire, without negligence on the part of the party having it in possession, did not excuse the party from delivering said property and this principle was announced in the case of McPherson v. Acme Lumber Company, 70 Miss. 649, 12 So. 857. In other words, the court held that the party in possession of property and under bond to redeliver it could not avoid his obligation to redeliver, by anything short of an act of God. In George v. Hewlett, supra, the case of Whitfield v. Whitfield, 44 Miss. 254, was overruled, but the cases of Irion v. Hume, supra, and Atkinson v. Foxworth, supra, were distinguished.

In Bobo v. Patton, 6 Heisk. (Tenn.) 172, 19 Am. Rep. 593, it was held that where property is taken by a plaintiff in replevin, and while in his possession pending the

proceeding, dies or is destroyed without his fault, he is not liable to the defendant for its value in case of a verdict for the defendant. In instructing the jury, the trial court there said, ''If they found for the defendant they will find the value of the animal, with interest thereon and damages since replevied until the present time; or if the proof shows the mare has died, then only to the date of her death.'' This was held to be error, and the appellate court said that, ''The plaintiff in replevin who takes possession of the property pending the litigation, takes the possession with a view to litigating the title. If during such possession and before the trial, by the act of God, or without the fault of the plaintiff, the property be lost or destroyed, the plaintiff is not to be held liable for its value, while he may be held liable for the value of its services during the period of its detention and up to the time when it ceased to be serviceable. The principle is, that if a bond or obligation possible of performance at the time of execution becomes impossible by the act of God, or of the law, or of the obligee himself, the obligation will be saved.''

At common law, generally, an act of God excused performance unless specially provided for in the undertaking.

In the trial of the case at bar, W. T. Hendon, appellee, did not show what effort he had made to reduce his damages, or secure other stock, nor did he say that he had sufficient stock to complete his crop. He introduced evidence of certain witnesses to show that the mules were worth from $1.50 to $2 per day each. There was a long period of time, practically a year, between the suing out of the writ of replevin, and the trial in the circuit court. It is familiar law that a party is under duty to reduce his damages, if he can do so. So far as the proof in this case shows, Hendon was not specially damaged by not having this particular stock to work his plantation. There is other proof in the record show-

ing that mules rented from $30 to $40 per year, and there is no showing that Hendon had any special use, other than making a crop during the growing season, for the mules in controversy. The element of damages on a per day basis is a highly unreasonable measure for damages, where the use of stock is merely for agricultural purposes upon an ordinary plantation.

In the state of the proof in this record, we think $200 damages for the use of the mules was unauthorized, and that the ordinary measure of damages in replevin, where special damages are not shown, is the value of the property, with interest, from the time of taking, to the time of judgment. Taylor v. Morton, 61 Miss. 24, and Heard v. James, 49 Miss. 236.

It may be that the jury, in the case at bar, was authorized to infer malice, or a purpose to oppress, by the making of the affidavit that the mules were taken from possession within 30 days. This was a question for the jury, on the evidence, provided they believed that Mars, appellant, knowing that he was not entitled to give bond, made a false affidavit to secure a privilege which would operate to deprive Hendon, appellee, of his right to give bond and retain the mules, but that conclusion does not necessarily follow under the testimony in this record.

We think it was improper to introduce, before the jury, the fact that Mars, appellant, was under indictment for perjury.

As the case must go back for retrial, we make this announcement so that this error may not occur on another trial because it is incompetent, for any purpose in this case, to show that fact. Counsel, as well as the court, are under duty to see that trials are fair and impartial between parties. It is a mistake to assume that such questions are competent to show the interest of a party in the particular suit. A former indictment has nothing to do with the trial of a case at bar. Only convictions may be introduced for the purpose of affecting

the credibility of witnesses, and for that purpose alone. We could not reverse on this ground, because there was no motion for a mistrial.

We hold, however, that counsel should have not only objected to the remarks, but when such objection was sustained, should have made a motion, if desired, for a mistrial. It would be unfair to permit a party, in such case, to gamble upon the verdict or decree by taking advantage of a favorable verdict, while setting aside an unfavorable one.

For the errors indicated, the judgment will be reversed and the cause remanded.

Reversed and remanded.

ON SUGGESTION OF ERROR.

**Ethridge, P. J.**, delivered the opinion of the court.

The suggestion of error filed herein took the usual course of being referred to another judge than the one who wrote the opinion, and it has been considered by the court, after which the court has decided to overrule it.

But we desire to make response thereto, and to elucidate the former opinion in certain respects.

Dr. Mars filed an affidavit that the property had been taken from his possession within thirty days prior to the making of the affidavit and the issuance of the writ of replevin. He testified that he thought he had legal possession of the property, and that he had rented the mules to Hendon.

Both Dr. Mars and W. T. Hendon testified to the making of the demand prior to the filing of the suit, and the refusal to surrender the property on such demand.

It is clear from the record that Dr. Mars did not legally or physically have possession of the property within thirty days prior to the filing of the suit, and by making the affidavit he deprived Hendon of the right to give

bond and retain possession of the mules, as he had a legal right to do, consequently Hendon was damaged to this extent, regardless of the right of possession.

If Dr. Mars made the affidavit willfully and maliciously, or with the intent to oppress Hendon, then, should the jury so find, he should be held liable for the value of the mule which died; but if he acted in good faith, although under a false conception of law, he would only be liable for the damage flowing from depriving Hendon of the right to give bond in the first instance, provided he establishes his right to possession of the mules.

In the former opinion, we stated there was direct conflict in the evidence as to whether Hendon rented the mules from Dr. Mars, or whether he sold them to Hendon, and this should be submitted to a jury on a new trial free from the errors there pointed out.

Although we would not reverse on this record for the erroneous admission of evidence that Dr. Mars was indicted for perjury in the justice of the peace court, because, as stated in the former opinion, there was no proper procedure to discharge the jury, it is important to the rights of the parties here that the case be tried anew to avoid impressions that may have influenced the jury.

The suggestion of error will, therefore, be overruled. Overruled.