## Thos. McFarland Lumber Co. *v.* Selby *et al.*

[93 South. 434, No. 22275.]

1. Frauds, Statute of.  *Oral promise to pay debt to creditor of another not within statute.*

    Where a firm was about to bring attachment proceedings to enforce a
    lien claimed upon lumber, and where a buyer from such debtor of
    the person about to attach agrees that, if said party will forego the
    attachment and let the lumber be shipped to the promisor, it will pay
    the amount claimed by the promisee, and where, relying on such
    promise, the lumber is shipped, the promise is not within the statute
    of frauds, requiring promise to answer for debt of another to be in
    writing. *Delta Lumber Co.* v. *Wall,* 119 Miss. 350, 80 So. 782, and
    *Lee* v. *Newman,* 55 Miss. 365, cited.

2. Principal and Agent.  *Principal held bound by agent's agreement to pay for lumber on abandonment of attachment.*

    Where an agent had general charge of the principal's business in this
    state in buying, grading, measuring, and loading lumber, and makes
    a trade with a firm for lumber, and such lumber is about to be at-
    tached by the creditor of the firm selling, and where, to avoid delay
    in the shipment and to avoid litigation, such agent agrees with the
    claimant about to attach that, if they will abandon the attachment
    and let the lumber be shipped, his principal will pay said claim, and
    where the lumber is shipped to, and used by, the principal after such
    agreement he will be liable on such promise.

Appeal from circuit court of Warren county.

Hon. E. L. Brien, Judge.

Suit by Thos. W. Selby and others against the Thos. McFarland Lumber Company and others. Judgment for plaintiffs, and defendant named appeals. Affirmed.

*Wm. J. McKay,* for appellant.

The maintenance of the suit is defeated by several insuperable bars. A. Statute of Frauds. Section 3119 of Hemingway's Code provides: "An action shall not be brought whereby to charge a defendant or other party— (a) Upon any special promise to answer for the debt or default or miscarriage of another person; unless . . . the promise or agreement upon which such action may be brought, or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some person by him or her thereunto lawfully authorized."

It goes without saying that the action in the case at bar was and is not brought on any promise or agreement, or any memorandum or note thereof, in writing, and signed by the party to be charged therewith, or any person by the defendant thereunto lawfully authorized.

"It is requisite that credit should be given exclusively to the promisor (defendant, Thomas McFarland Lumber Company); if any credit be given to him (defendants, Simrall & Grogan) for whose benefit the promise is made, the promisor is not liable unless his promise is in writing." 127 Ala. 240; 74 Ga. 454; 1 Ill. 79; 62 Ind. 156; 23 La. Ann., 690; 36 Me. 113; 13 Md. 190; 13 Allen (Mass.) 136; 94 Mich. 363; 34 Minn. 410; 78 Mo. App. 234; 27 N. J. L. 440; 1 Hilt. (N. Y.) 209; 76 Pa. St. 97; 25 R. I. 129; 15 Vt. 422; 10 Leigh (Va.) 155; 23 W. Va. 724; 91 Wis. 65; In the case at bar credit was continued to be given to defendants, Simrall & Grogan, the primary and original debtors, and they continued liable, for the conclusive reason that they were sued as co-defendants, with the defendant, Thomas McFarland Lumber Company and

judgment obtained both on the original and collateral undertakings. Just such a case as this the court decided in the case of *Sweatman* v. *Parker,* 49 Miss. 19.

But acting upon the general rule as stated by Roberts and Kent some of the American courts have held, that wherever there was a new consideration, distinct from that which supported the original debtor's lability, and moving between the parties to the guaranty, the defendant's promise was saved from the statute. However respectable the countenance it has received, this doctrine, if unqualified, must be repudiated as not based upon authority, and as, to a great degree, nullifying the statute. And it may also be fairly said that the better opinion of courts and of commentators is now leaning against it.

The qualification required is that the original debtor's liability must be discharged by the new promise, which is not true in the case at bar. All this court has to do is to substitute the names of the parties in the case at bar in the appropriate places in the above quoted opinion and the solution of the case at bar in favor of the appellant necessarily follows. The court will be pleased to note how approvingly the court quotes the above from the Sweatman-Parker case in the case of *Bloom* v. *McGrath,* 53 Miss. 249. If the primary or original debtor is not discharged and the original debt still subsists concurrently with the oral agreement to assume it, the latter is within the statute of frauds and is void as a collateral agreement to answer for the debt of another. 69 Ala. 48; 61 Pac. (Cal.) 578; 18 Colo. App. 449; 35 Conn. 343; 101 Ga. 307; 156 Ill. 555; 60 Ind. 46, 105 Ia. 499; 46 Kan. 389; 79 Me. 282; 111 Mass. 501; 77 Mich. 504; 31 Mo. 424; Lalor 109 (N. Y.) 36 O. St. 331; 28 Ore. 242; 9 Phila. (Pa.) 22; 2 Mill (S. C.) 113; 56 S. W. (Tex.) 543; 41 Vt. 311; 11 Gratt. (Va.) 636; 88 Wis. 542; *Hendricks* v. *Robinson,* 56 Miss. 694.

If it be contended that the case at bar is taken out of the operation of the statute by the alleged fact that plaintiffs, Selby & Woods, refrained from threatened attach-

ment proceedings against the lumber, which defendant, Thomas McFarland Lumber Company, had before then innocently bought and paid for in full from defendants, Simrall & Grogan, the conclusive reply is that:

"It is well settled that a promise to pay the debt of another in consideration merely of forbearance to the creditor to sue the original debtor or to make an attachment, or levy an execution, without any new or original consideration moving to the promisor and beneficial to him, is within the statute of frauds, and must be in writing." 85 Ala. 127; 60 Conn. 71; 11 Colo. 415; 3 Ill. 511; 160 Ind. 70; 2 Ia. 528; 13 B. Mon. (Ky.) 356; 33 Me. 373; 11 Allen (Mass.) 365; 71 Mich. 201; 79 Minn. 309; 7 Mo. 495; 16 N. J. L. 302; 108 N. Y. 222; 15 Ore. 356; 1 Strobh. (S. C.) 5; 4 Yerg. (Tenn.) 563; 48 Vt. 58; 9 Wash. 442; 1 K. B. (Eng.) 778; 27 Ont. (Can.) 285; and see particularly the principles announced in the cases cited and quoted from above from our own court. As well settled by all of the authorities, if it had been true that plaintiffs, Selby & Woods had a lien on the lumber, which defendant, Thomas McFarland Lumber Company, without notice or knowledge thereof, had bought and fully paid for from defendants, Simrall & Grogan, then the alleged oral promise of defendant, Thomas McFarland Lumber Company to pay the primary debt of the original debtors, defendants, Simrall & Grogan, would be taken out of the operation of the statute of frauds only in the event that plaintiffs, Selby & Woods, actually assigned their lien to defendant, Thomas McFarland Lumber Company, and that the benefit of such lien should have actually inured to Thomas McFarland Lumber Company. But under the principles announced in the Sweatman-Parker case, it is not believed that even in the above supposed case would the oral, collateral promise be taken out of the statute, because the primary obligation of the original debtor, Simrall & Grogan, was not discharged, but sued on and reduced to judgment along with the collateral, oral undertaking of the defendant Thomas McFarland Lumber Company." In

fact the general rule elsewhere also is: "A parol promise to pay the debt of another merely in consideration of forbearance by the creditor to enforce a lien against the original debtor will not be enforced if such forbearance does not inure to the benefit of the promisor and the original debtor remains liable." 85 Ala. 127; 33 Ill. App. 261; 129 Ind. 542; 58 Me. 439; 106 Mass. 400; 117 Mich. 553; 98 N. 425. Therefore, it is confidently submitted that the oral promise sued on, if made, was and is void under the statute of frauds.

*John Brunini,* for appellee.

We are of the opinion that it would be idle on our part to cite authorities to show that the principal is bound as between himself and third persons by the real and apparent authority with which the agent is vested, and we deem it equally idle to further review the facts to show the real and apparent authority of Rehse and Young in relation to this transaction.

The Statute of Frauds. This case is governed by the principles announced by this honorable court in the case of *Lee* v. *Newman,* 55 Miss. 365, 372, 373, 374. 3 Pars. on Con. (5 Ed.), 24. The contract not being within the statute, this cardinal test of whether it is a collateral or an original undertaking (see *Sweatman* v. *Parker,* 49 Miss. 19, and *Bloom* v. *M'cGrath, et al.,* 53 Miss. 249) does not apply. It is not the debt of another, but his own debt, which he has promised to pay, and neither the fact that the payment is to be made to a third person, nor the fact that in paying his own debt he extinguishes that of another, nor the fact that the liability of that other continues the same after as before his undertaking, brings it within the statute.

It is usually said that: "if the consideration of the new promise springs out of any new transaction, or moves to the party promising upon some fresh and substantive ground of personal concern to himself, the statute of

frauds does not attach.  Mr. Browne, in his work on the statute of frauds, considers that a safer method of stating the rule would be to say that wherever, "the primary and distinctive obligation assumed by the defendant is different from that of a guarantor, although as incidental to and in the discharge of, that obligation the debt of another was satisfied, the defendant's promise is not within the statute."  Browne on Stat. Fr., section 212, and notes; section 166 and cases cited."  *Wear Boogher* v. *Kelly,* 84 Miss. 236; *Delta Lumber Company* v. *Wallet Ux,* 119 Miss. 350-55.

We think from an examination of the evidence for the complainant or plaintiff that, if it be conceded that these statements are true, there was an original contract between the lumber company and Wall for said material, and this contract of course does not have to be in writing to impress the building into which such material went with a materialman's lien.  It is immaterial that the lumber company had previously made an agreement with Lacour to furnish the lumber to him, because if they had done so they could have established a lien by serving notice under the statute prior to the payment of the contract price.  If complainant's testimony be true, Wall's act caused them to abrogate their contract with Lacour and deal with Wall as the original contractor.  *Lee* v. *Newman,* 55 Miss. 365.

Under Wall's theory of the case, his promise as testified to by the manager of the lumber company, was to pay his own debt to Lacour to the lumber company instead of to Lacour, to protect the lumber company against loss for material furnished to build the house of Wall.  If no promise had been made by Wall to the lumber company, the lumber company could have established a lien upon the house by the simple expedient of giving notice of the amount of their debt for such materials, and no doubt would have done so.  At all events the lumber company was warranted in relying upon the express promise of Wall to meet and discharge this claim, and Wall would

now be estopped to take advantage of his own wrong. If Wall contends there was no such agreement, this presented a question of fact to be decided by the jury under a proper instruction, and if the jury believed that Wall made the promise or agreement as testified by the witnesses for the lumber company, the lien would be established, even though no notice in writing was given as required by the statute." (27 C. J. 135.)

The rule is splendidly set forth commencing with page 145, in 27 C. J. Among the many cases cited in support of this text are *Sweatman* v. *Parker,* 49 Miss. 19; *Olive* v. *Lewis,* 45 Miss. 203.

It has been shown that the appellant labored under a misapprehension of the facts in that it assumed that the claim of Selby & Woods was simply for cutting and hauling logs. The case of *Sweatman* v. *Parker,* 49 Miss. 19, presents a case which is clearly distinguishable from the case at bar. We make no war upon the principles therein announced. In fact we rely upon them.

Appellant fails to recognize that the facts in this case do not show that there was a promise of the McFarland Lumber Company "to answer for the debt, default or miscarriage of another," It has failed to read the authorities with discrimination.

This is true also of the citation which it makes on page 8 of the brief, as follows: "It is well settled that a promise to pay the debt of another in consideration merely of forbearance to the creditor to sue the original debtor, or to make an attachment, or levy an execution, without any new or original consideration moving to the promisor, and beneficial to him, is within the statute of frauds, and must be in writing."

We do not controvert the principles announced. In fact the authorities holding to the foregoing are those upon which we rely. The forbearance in the case at bar was towards the McFarland Lumber Company so that it might make the shipment and get the lumber. It was not a for-

bearance to Selby & Woods.  The consideration moved to the promisor and was beneficial to it.

It is manifest that the appellant wholly misconceived the facts in this case, as well as the law applicable thereto, and we urge in confidence the affirmance of the verdict in the lower court.

ETHRIDGE, J., delivered the opinion of the court.

Thomas W. Selby and others, constituting the firm of Selby & Woods, filed suit against the appellant, Thos. McFarland Lumber Company, a corporation, and Simrall & Grogan, a partnership composed of H. Simrall and H. Grogan, alleging that between the 1st of July, 1916, and the 1st of December, 1916, the plaintiffs, at the instance and request of Simrall & Grogan, cut, furnished, sold, and delivered to said Simrall & Grogan lumber at agreed price as set out in an exhibit to the declaration; that the said Simrall & Grogan agreed with plaintiffs to pay them the amount set forth in said itemized statement, and the total of the amount to plaintiffs by said firm was one thousand three hundred forty-six dollars and twenty-two cents; that the said defendants paid nine hundred and thirty-five dollars on said account, and that there remains due four hundred eleven dollars and twenty-two cents; that the said Simrall & Grogan accepted the said lumber.

It is further alleged that the plaintiffs by their contract and service acquired a lien upon the said lumber for the balance due them, and that the Thos. McFarland Lumber Company was aware of the fact that said plaintiffs had not been paid for said lumber and service; that the said Simrall & Grogan hauled for and sold to the defendant Thos. McFarland Lumber Company lumber at a price the exact amount of which is unknown.  Plaintiff's further allege that they threatened to and were about to attach said lumber or to institute proceedings to enforce their said lien for the balance of the purchase price, and that the said Thos. McFarland Lumber Company promised and agreed to and

with plaintiffs that, upon consideration of plaintiffs refraining from attachment proceedings to enforce their lien, the said Thos. McFarland Lumber Company would pay to the plaintiffs the said four hundred and eleven dollars and twenty-two cents; that the said undertaking was an original undertaking to promote the interest of the said Thos. McFarland Lumber Company and to secure to them new and independent benefits, and thereby they became bound and obligated; that as to a part of the said four hundred and eleven dollars and twenty-two cents a novation took place, the said Thos. McFarland Lumber Company agreeing to pay the plaintiffs the sum of three hundred and sixty dollars, the same constituting the purchase price of said lumber and hauling due from the said McFarland Lumber Company to Simrall & Grogan, as to which three hundred and sixty dollars the said Thos. McFarland Lumber Company charged the defendants Simrall & Grogan on account, and that the said Simrall & Grogan assented thereto.　It appears that one Rehse was buying lumber for the Thos. McFarland Lumber Company in Mississippi, and that he, representing the McFarland Company, entered into a contract with Simrall & Grogan by which the lumber company advanced him certain money and contracted for certain lumber. Simrall & Grogan employed Selby & Woods to haul certain timber and lumber for them, and also bought certain timber from the said Selby & Woods from which to manufacture lumber.　Simrall & Grogan got behind with their creditors, and turned over to Selby & Woods a carload of lumber on their account.　Certain creditors of Simrall & Grogan began an attachment proceeding, and Selby & Woods were fixing to attach certain lumber sawed by Simrall & Grogan which was to be sold to Thos. McFarland Lumber Company and appears to be on the ground at the station, but had to be graded, measured, and loaded.　In this situation Rehse agreed with Selby & Woods that, if they would not attach, but let the lumber go forward, the Thos. McFarland Lumber Company would pay three hundred and sixty dollars, which at

said time all parties thought the Thos. McFarland Lumber Company would owe Simrall & Grogan. The lumber was shipped under this agreement, but on getting up a statement of the account it appeared that Simrall & Grogan would owe the Thos. McFarland Lumber Company, instead of having anything due them from said lumber company. The lumber company thereupon refused to pay Selby & Woods. There was a judgment below in favor of Selby & Woods, from which this appeal is prosecuted.

There are two main contentions made by the appellant. One that the promise made by Rehse, being an oral contract, violated the statute of frauds, because it is claimed it is a promise to pay the debt of another; and, second, that Rehse had no authority to make any such contract on behalf of the appellant. It is also insisted that Selby & Woods had no lien against the lumber involved because the proof does not show that the lumber was manufactured from timber sold Simrall & Grogan by Selby & Woods, and it is insisted that Selby & Woods were not employees of Simrall & Grogan, and neither had a vendor's lien nor an employee's lien.

Rehse appears to have been in general charge of the operations of the Thos. McFarland Lumber Company in this territory. He bought, graded, and measured lumber and loaded it on cars, and it was paid for as a rule direct from the Cairo office of the Thos. McFarland Lumber Company. In some cases he made contracts on behalf of the Thos. McFarland Lumber Company by which they advanced certain of their customers money with which to finance their operations, and he made a contract with Simrall & Grogan of this kind.

In reference to the statute of frauds we think this case is governed by the principle announced in *Delta Lumber Co.* v. *Wall,* 119 Miss. 350 et seq., 80 So. 782, and *Lee* v. *Newman,* 55 Miss. 365. The procuring of the plaintiffs to abandon their contemplated attachment and let the lumber be shipped to the appellant on the agreement of the appellant to pay their demand, we think, constitutes an in-

dependent contract to that extent. It is true that the conract, if carried out, would result in paying the debt Simrall & Grogan owed to Selby & Woods, but this fact did not make it a contract or agreement within the statute of frauds to answer for the debt of another.

In reference to Rehse's authority, he seems to have had authority to buy and have shipped to the appellant lumber and to contract for the price to be paid for the lumber. The deal here made was within the scope of this authority. It was in effect buying the appellee's claim against the lumber and to secure the lumber without delay and the avoidance of litigation. The lumber was shipped to the appellant, and it received it and had the benefit of this contract. It is true that the agent of the lumber company thought the lumber company owed Simrall & Grogan money, and that he contemplated paying this money to Selby & Woods instead of to Simrall & Grogan. His estimate and judgment of the amount the lumber would average which he was buying and had bought from Simrall & Grogan would be higher than it actually graded, but according to the evidence in this case on the part of the plaintiff he did not stipulate that he would pay Selby & Woods such balance as the company might owe them, but stipulated that he would pay them the amount of their claim against the lumber. Rehse testified that the company did not carry out his idea in paying Selby & Woods; that he contemplated paying them out of the proceeds of the car of lumber so shipped. In our view it is not necessary to decide whether or not the lien actually existed against the lumber, because, the plaintiff was claiming the lien and was about to institute proceedings with the view of establishing it and was induced to abandon this proceeding and surrender his right to do so, and this was the consideration for the promise to pay the recovery would be permitted whether there was an actual lien against the lumber or not. By his agreement he prevented the seizure and prevented the plaintiffs having an opportunity to establish his right, and after the receipt of the fruits of this agreement, it cannot

be held that he can in this proceeding defeat liability by showing that there was in fact no lien. This is not a suit for a conversion of property subject to a lien by a party without agreement in reference thereto, but is a suit to enforce a contractual obligation independent in its nature upon sufficient legal consideration.

The judgment of the court below will therefore be affirmed.

*Affirmed.*