UNITED STATES FIDELITY & GUARANTY CO. *v.* PARSONS *et al.*

(Division A.   May 27, 1929.)

[122 So. 544.   No. 27329.]

*R. L. McLaurin* and *Chaney & Culkin,* all of Vicksburg, for appellant,

*Wm. I. McKay*, of Vicksburg, for appellees.

*Hirsh, Dent & Landau, J. B. Dabney* and *Brunini & Hirsh,* all of Vicksburg, for appellees.

Cook, J., delivered the opinion of the court.

This suit grew out of a contract for the building of a residence on a lot owned by Mrs. Edna Earl Parsons, located near the city limits of Vicksburg, Miss. The appellee Mrs. Parsons filed a bill of complaint in the chancery court of Warren county against J. W. McNeill, contractor, the United States Fidelity & Guaranty Company, as surety on the building contract, and several materialmen who furnished material for the construction of the said residence and who were asserting their claims against the said appellee and the surety. The several materialmen who were made defendants to the bill filed answer and made these answers cross-bills against the surety, asserting therein the liability of the surety to them for their unpaid bills for labor and material furnished and used in the construction of the residence. The surety company filed a general demurrer to the bill of complaint, and also several special demurrers, and, upon the hearing of these demurrers, the general demurrer was overruled, and one special demurrer was sustained, and, from the orders so ruling, appeals were prosecuted to this court. The action of the court below upon these demurrers were affirmed both on the direct appeal from the order overruling the general demurrer and on the cross-appeal from the order sustaining the special demurrer. The opinion of the court on this former appeal is reported in 147 Miss. 335, 112 So. 469, 53 A. L. R. 88, and is herein expressly referred to for a full statement of the averments of, and relief sought by, the original bill of complaint, as well as the issues involved and decided by the court.

Upon the remand of the cause to the court below, the contractor, McNeill, filed an answer to the bill of complaint admitting that, by in advertence, oversight, and mistake on his part and the said surety, the bond in

question named Dr. W. H. Parsons, the husband of complainant, as the obligee therein, instead of the complainant; that the complainant accepted said bond with said error and mistake therein; that she, as well as the respondent McNeill, relied on the same without noticing said error and mistake; that it was the attempt and intention of the said respondent and the defendant United States Fidelity & Guaranty Company to name the complainant as the obligee in said bond and not her husband; that it was the mutual attempt and intention of the respondent and the said surety company to deliver, and the complainant to receive and rely on, a bond with the complainant as the obligee therein; that neither the complainant nor the respondent noticed the said error or mistake in said bond until informed thereof after the date of the fire mentioned in the bill of complaint, and further admitting all other allegations of the bill of complaint, except the respondent's personal liability for an insurance premium of one hundred seventy-two dollars and fifty cents.

The defendant, United States Fidelity & Guaranty Company, filed its answer to the bill of complaint, denying all the averments of the bill which affected it adversely, and particularly the averment that there was any oversight or mistake in naming the obligee in the bond, and charged that the bond in question was written exactly as applied for by the contractor, McNeill; that the surety undertook to guarantee only as indicated in the bond; that it was the intention of the said surety to write the bond as it was written, and it was the intention of all the parties thereto that it be so written; that the said surety did not guarantee, or undertake to guarantee, and it was not the intention of the parties thereto that it should guarantee, the performance of any contract with the complainant, Mrs. Edna Earl Parsons, or to guarantee anything other than expressed

in the bond; that the said surety did not, by mistake, insert the name of Dr. W. H. Parsons instead of Mrs. Parsons, but that the bond was written as requested by the contractor, McNeil, and therefore denied that the bond or contract should be reformed, or corrected, or changed in any respect, and denied that the complainant was entitled to recover any amount against the said surety, or that she was entitled to any of the relief prayed for.

Cambre Bros., one of the defendant materialmen, filed a cross-bill against the said surety and against Dr. W. H. Parsons, and the complainant, Mrs. Parsons, in which the surety's liability for material furnished by the said cross-complainant to the contractor was asserted, and also in which the personal liability of the complainant and Dr. Parsons for the cost of such material was asserted on the ground that, before any of said material was delivered to the contractor, they gave the written statutory notice to Dr. Parsons, giving him full information as to their contract with the said contractor, and notifying him to hold out of any funds due the contractor an amount sufficient to pay this indebtedness to them, and also on the further ground that, before any of the material so furnished to the contractor was shipped to him, the said Dr. W. H. Parsons assumed personal liability for all debts created with them by the contractor for material used in the erection of the said dwelling house. The cross-respondents, Dr. and Mrs. Parsons, filed an answer to the cross-bill of Cambre Bros. denying that the said cross-complaint gave them any such notice as is required by statute to withhold from the contractor any payments due him, and also denying that the said Dr. W. H. Parsons personally, or as the agent of Mrs. Parsons, promised to pay for said material, and pleading that, if any such alleged oral promise to answer for the debts or default of the contractor was made, it was within the statute of frauds, and therefore unenforceable.

The cause was heard upon the pleadings and proof, and a final decree was entered reforming the bond in accordance with the prayer of the bill of complaint, and awarding the complainant a recovery against the contractor, McNeill, and the surety, United States Fidelity & Guaranty Company, for the difference between the total cost of reconstructing the house, after the original house was burned, including the rental value of the house from the date the first, or burned house should have been completed to the date of the completion of the rebuilt house, and the amount of fire insurance collected by the complainant on the first, or burned, house, and also legal interest on said amount; and also awarding each of the intervening materialmen and laborers a recovery against the said contractor and surety for the amount of their claims, with legal interest, and awarding Cambre Bros., a recovery against Dr. W. H. Parsons and Mrs. Edna Earl Parsons for the amount of their claim against the contractor, and providing that, if the said claim of Cambre Bros., was paid by the surety, then said amount should be deducted from the amount of the liability of said surety to the complainant, and taxing the contractor and surety with all the costs, except such as was incurred in the connection with the claim of Cambre Bros., the costs in this regard being taxed against the cross-respondents, Dr. and Mrs. Parsons.

The proof shows that the appellee Mrs. Parsons owned a lot in Warren county near the city limits of Vicksburg, Miss., and desired and planned to have a dwelling house constructed thereon. She employed an architect to prepare plans and specifications for the desired residence, and, after submitting them for bids, finally contracted with the defendant J. W. McNeill to construct said house in accordance with the said plans and specifications; the written contract between them being executed by Mrs. Parsons, by and through her husband, W. H. Parsons, as her agent. The plans and specifications provided

that "the owner shall carry fire insurance on the building, and the contractor is to pay his *pro rata* of the costs," and also that "the contractor is to give bond acceptable to the owner in some surety company to the amount of the contract price," and these plans and specifications were made a part of the contract. The contract, and each page of the said specifications, was signed by J. W. McNeill, as contractor, and by Edna Earl Parsons, as owner, by W. H. Parsons.

R. C. Wilkerson, Inc., an insurance agency of Vicksburg, was the agent in the county of Warren for the appellant, surety company, with authority to solicit bonds, take applications therefor, and transmit such applications, with a copy of the contract to be guaranteed, to the general, or state, agent of said surety company which was authorized to execute bonds, and then to complete and deliver the bond and collect and remit the premium, less its commission. R. C. Wilkerson was the president of this insurance agency, and Theo Hardy was its vice president. Frank Williams, Inc., of Meridian, Miss., was the general agent in and for the state of Mississippi of the said surety company, with authority to accept applications for surety bonds, investigate the risk, and execute such bonds through the surety's attorney in fact, W. V. Ludham.

Mr. R. C. Wilkerson, president of the aforesaid Vicksburg insurance agency, and Dr. Parsons were intimate friends, and Dr. Parsons informed Mr. Wilkerson that his wife contemplated building a residence on the lot in question, and had contracted with J. W. McNeill to erect the building; that the contract required the contractor to execute a surety bond for the faithful performance of the contract, and he desired the said bond, as well as the necessary fire insurance, to be written through the Wilkerson Insurance Agency. Mr. Wilkerson and Dr. Parsons discussed the matter several times, and Dr. Parsons fully explained to him the state of the title of

the lot, and the fact that the house was being built by Mrs. Parsons. Together they visited the lot on which the house was to be erected, and Wilkerson testified that, in the course of their conversation, Dr. Parsons very forcibly impressed on him the fact that the house was being built for Mrs. Parsons, and that he (Wilkerson) then informed Dr. Parsons that the bond would have to be written in favor of Mrs. Parsons, the owner of the lot. Upon the question of his knowledge, and knowledge of the general agency of the fact that the bond was to guarantee the performance of the contract between McNeill and Mrs. Parsons, Wilkerson further testified as follows:

"Q. State what, if anything, Dr. W. H. Parsons ever discussed with you with reference to building a house or a home in the City of Vicksburg? A. Well, sometime prior to Dr. Parsons's building a home, he sent for me and told me that he was contemplating a home for his wife, and that he wanted to entrust to me the privilege of making the bond for the erection of the house and give me the fire insurance and other insurance that he might want thereon. We discussed the matter not only once but quite a few times, and in the course of our conversation Dr. Parsons impressed on me very forcibly that the house was being built for Mrs. Parsons.

"Q. And on a lot belonging to whom did he state, if he stated? A. I went out there and saw the location where he contemplated building the house, and he told me that the lot belonged to his wife, and I told him then that whenever the bond was made for it that it would have to be made, as well as the insurance written in the name of whoever was building it, and whoever the deed to the property rested in.

"Q. With whom did he say that his wife was about to contract to build a home for? A. My impression is

that he figured with quite a few, but finally, agreed to give the contract to Mr. McNeill.

"Q. State whether or not Mr. McNeill afterwards constructed the house, at least in part? A. Dr. Parsons told me that he had practically agreed with Mr. McNeil to build the house, and the contract would be let, provided the bond was made, and at the time I instructed Mr. Hardy to find Mr. McNeill and tell him the circumstances and get him to come down to the office and make the application for the bond, and he did come down.

"Q. At the time Mr. McNeill made the application for the bond, state whether or not you knew that the title to the lot upon which the house was to be built was in the name of Mrs. Edna Earl Parsons, and whether or not you knew that the contract had been made in her name and that the bond guaranteeing that contract was to be in her favor and not in favor of Dr. W. H. Parsons. (Objection. Overruled.) A. It is my understanding from all my conversations with Dr. Parsons that the contract was being made in Mrs. Parsons' name and that the bond necessarily had to be made based on the contract. . . .

"Q. Answer of your own knowledge what you started to say, if you can? A. Well I know it to be a fact that my office had the matter up prior to the execution of this bond, as to the responsibility of Mr. McNeill, and whether or not the company would consent to make the bond for Mr. McNeill, and that my office in having that conversation over the telephone with the home office relative to this bond, that the home office thoroughly understood that the bond was to be predicated on the contract that was entered into between Mr. McNeill and Mrs. Parsons for the building of this particular house, under this particular bond that was executed.

"Q. Did you ever see the correspondence that passed between your office and the general agency? A. Not all of it—but I talked to Mr. Ludham on the subject of this very contract myself over the telephone.

"Q. That was after it was executed. A. No, sir, that was before the execution of the bond. . . .

"Q. What was the date of this conversation that you say you had over the 'phone with the office. A. A very short time prior to the taking of the application, because we were endeavoring to furnish Mr. Ludham, the Assistant General Manager of Frank W. Williams' office, who is the General Agent of the State of Mississippi of the U. S. Fidelity & Guaranty Company, with the facts in reference to the bond to build this house for Mrs. Parsons, and we wanted to know of him who has the authority to execute and who does sign, and probably did sign this particular bond, because he signs a vast percentage of them—whether or not he would execute the bond in favor of Mrs. Parsons for the man McNeill who was applying for the bond. There isn't any question—not a shadow of doubt in my mind—(Objection. Sustained.)

"Q. Go ahead. A. Well Mr. Ludham knew that the house was being built for Mrs. Parsons. . . .

Theo Hardy, vice president of Wilkerson Insurance Agency, testified that he interviewed the contractor for the purpose of securing this bond to be executed by the appellant surety company, and afterwards the contractor came to his office and made his written application for the bond; that he had no information as to who was building the house, except such as was furnished by the contractor; that, in answer to interrogatories appearing on the form for the application, the contractor informed him that Dr. W. H. Parsons was to be the obligee in the bond, and he so entered this answer of the contractor on the application, and the same was signed by the said contractor; that this application was for-

warded to the general agent at Meridian, and the bond was written in accordance with the application.

W. V. Ludham, attorney in fact for the appellant surety company, testified that the application of J. W. McNeill for a bond was received by him at the office of the general agent in Meridian; that he had no information in reference to the contract to be guaranteed, except such as appeared on the application; that he prepared and executed the bond in strict accordance with the application, and then returned it to the Vicksburg agency to have the date of the contract inserted therein, and to have it thereafter signed by the contractor and delivered to the obligee.

The answer of the contractor, McNeill, admits, and the record abundantly shows, that the said contractor knew that the building was being constructed by Mrs. Parsons on land belonging to her; that the contract had been executed in her name by her husband as agent, and that she was the proper obligee in the bond to be executed by him, but he testified that, when he made application for the bond, he thought that Mr. Hardy knew it should be in favor of Mrs. Parsons, and that, when he was asked to name the beneficiary, he gave the name of Dr. Parsons who had been acting in the matter for his wife, Mrs. Edna Earl Parsons.

The appellant first contends that the trial court was in error in awarding judgment against it in favor of Mrs. Parsons for any sum, even if the evidence warrants a reformation of the bond, the basis of this contention being that the said owner was obligated to insure the building against loss by fire to the extent of the full value thereof, and, since there was evidence to show that the value of the burned building equaled, or exceeded, the cost of the new building, under the decision of this cause on the previous appeal, there could be no recovery by Mrs. Parsons. The contract provided that

"the owner is to carry fire insurance on the building," and in the opinion rendered on the former appeal of this cause, in discussing the contention that, because the amount of insurance carried by the owner was not sufficient to rebuild the house, the owner took the risk, and the contractor and surety was thereby relieved from the obligation to rebuild, the court said that a reasonable construction of the clause of the contract requiring the owner to carry fire insurance "would be that it would be insured for its value, and to the extent of the amount of the contractor's investment therein." The appellant contends that, since the court held in the former opinion herein that a reasonable construction of that clause of the contract would be that it would be insured for its value, the owner was required by this provision to insure for the full value of the building, and, since she breached her contract in this regard, and since the evidence showed that the insurance would have been sufficient to rebuild the house, if the burned house had been insured for its full value, she is not entitled to recover anything from the contractor and the surety.

If, by this expression in the former opinion, the court intended to, and did, hold that by this provision owner was required to maintain insurance to the full value of the building, as shown by subsequent developments, without regard to the contract price thereof, the contention of appellant is correct, but the court did not, by this statement, mean to so hold. "The primary rule in the construction of contracts is that the court must, if possible, ascertain and give effect to the mutual intention of the parties, so far as that may be done without contravention of legal principles," and, "contracts must be construed with reference to the intention of the parties at the time of entering into the contract." 13 C. J. 521 and 523. What, then, would necessarily have been within the contemplation of the parties? It was mutually agreed that the owner would carry fire insur-

ance on the building, and the contractor would pay his *pro rata* of the premium. The contract price for the erection and construction of the building was nine thousand two hundred sixty-five dollars, to which the owner was to make certain additions at her own expense, which would make the completed house cost her ten thousand one hundred seventy-five dollars and seventy-five cents. When the contractor agreed to construct the house for nine thousand two hundred sixty-five dollars, he naturally did not expect to construct a house of a value largely in excess of the contract price. When the contractor agreed to furnish all the labor and material and build the house for nine thousand two hundred sixty-five dollars, the owner would naturally expect to secure for that sum a house of a value bearing some reasonable relation to the contract price, and we think the value of the building that was within the contemplation of the parties at the time of the making of the contract was the total cost of the building, taking into consideration, at the time the insurance was procured, the progress of the work and the proportionate part of the building that had been completed, and not some estimated value that might be determined some time afterwards from an estimate of what it would then cost to replace the building that had been destroyed. The appellee Mrs. Parsons carried insurance in a sum largely in excess of the total cost to her of the building, and we think there was no breach of her obligation to insure.

The appellant next contends that under the evidence there was no such mutual mistake in the execution of the bond as would authorize a reformation thereof. It is clear from the testimony hereinbefore quoted that, at the time the application for the bond was prepared, signed, and forwarded to the state agency for the execution of the bond, the local agency of the surety knew and fully appreciated the fact that the lot of land upon

which the contemplated house was to be built belonged to, and the title thereof was in the name of, Mrs. Parsons and not Dr. Parsons; that Dr. Parsons owned no lot, and did not contemplate building any house; that Mrs. Parsons had contracted with Mr. McNeill to build for her a house on her lot, and for which he was to furnish her a bond; that Dr. Parsons had made no contract with any one; and that the desired bond must be in favor of Mrs. Parsons and not Dr. Parsons. The testimony of Mr. Wilkerson, president of the local agency of the surety company, abundantly supports a finding that, prior to the execution of the bond, this information was communicated to the attorney in fact of the surety company, who had authority to execute bonds, and who did actually execute the bond in question. This witness testified that he communicated all these facts to appellant's attorney in fact at its home office, or general agency; that the general agency thoroughly understood that the bond was to be predicated on a contract that was to be entered into between Mr. McNeill and Mrs. Parsons for the building of this particular house, under the particular bond that was executed; and that the appellant's attorney in fact, who afterwards received and passed upon the application for the bond and actually executed the bond, knew that the house was being built for Mrs. Parsons.

The record discloses, without controversy, that, at the time he applied for the bond, the contractor, the principal in the bond, knew that Mrs. Parsons owned the lot on which the house was to be constructed; that his contract to construct the house was with Mrs. Parsons; and that she was the proper beneficiary of, or obligee in, the bond, and when, or if, he gave the name of Dr. Parsons in answer to an interrogatory as to the name of the beneficiary, the mistake was the result either of negligence or fraud on his part. The principal enjoyed all the benefits which the bond was intended to secure, and, under all the

facts and circumstances shown in evidence here, we are of the opinion that both the principal and the surety are estopped to deny that the name of Dr. Parsons was inserted in the bond by mistake, or to deny that it was the mutual intention of the parties that the bond should guarantee the performance of the contract with Mrs. Parsons. 21 C. J. 1211; *Point Pleasant* v. *Greenlee & Harden,* 63 W. Va. 207, 60 S. E. 601, 129 Am. St. Rep. 971.

In the case of *Graves* v. *Tucker,* 10 Smedes & M. 9, it was held that: "If a principal, in procuring one to become his surety, commits a fraud upon the surety, either in suppressing or misstating facts, and the creditor has no knowledge of and gives no assent to the fraud, the surety will be liable to the creditor."

In the case of *Point Pleasant* v. *Greenlee & Harden. supra,* the court said: "In *United States* v. *Hodson,* 10 Wall 395, 19 L. Ed. 937, and *Daniels* v. *Tearney,* 102 U. S. 415, 26 L. Ed. 187, the supreme court of the United States holds: 'When a bond is voluntarily entered into and the principal enjoys the benefits it was intended to secure, and breach occurs, it is then too late to raise the question of its validity. The parties are estopped from availing themselves of such defense.' And that which estops the principal also estops the surety: Brandt on Suretyship and Guaranty, sec. 52."

Sureties are in privity with the principal, and are bound by the consequences of his acts, *Davis et al.* v. *Hoopes et al.,* 33 Miss. 173; and in the case of *Atkinson* v. *Foxworth,* 53 Miss. 741, it was held that: "What he (the principal) would not be permitted to do, his sureties cannot. They are sponsors for him; and when his liability on the bond is fixed, so is theirs. They undertake that he shall perform his contract. The consideration inures to the principal, and not to them. If the principal waives a right, or by his acts or declarations puts himself under an estoppel, they are bound by his

conduct. *Montgomery* v. *Dillingham,* 3 [Smedes] S. & M. 647; *Dillingham* v. *Jenkins,* 7 [Smedes] S. & M. 479."

Having reached the conclusion that the principal and the surety were estopped to deny that the bond was executed in favor of W. H. Parsons as a result of a mutual mistake, it follows that under the facts here in evidence the right to reform is not barred by reason of the failure of the agent of the real beneficiary to read the bond and discover the mistake. The proof shows that the beneficiary and her agent relied on the local agency of the appellant to secure a bond in accordance with the agreement between them, and, on the former appeal of this cause, in discussing the ground of the demurrer which challenged the right of the complainant to reform the bond, for the reason that she had retained it and negligently failed to discover the mistake, the court said: "The demurrer confesses these facts to be true (that by mutual mistake the bond was executed in favor of W. H. Parsons), and the general rule is that, as to fire insurance policies and indemnity bonds, parties are not precluded from correcting a mistake, although the paper was not read over, or was carelessly read by the beneficiary, but if one has carelessly read or otherwise failed to read, and moves promptly to have the mistake corrected so that the rights of the other parties to the contract will not be affected thereby, such mistake will be corrected; but there may be such gross negligence on the part of the parties seeking to reform the contract as to conclusively estop such parties from asserting a right to reform. No such gross negligence arises here." The mere failure to read a contract, or to have it read, is not necessarily such negligence as will bar the right to reform the same on the ground of mutual mistake, and we do not think the proof here shows any such gross negligence as would defeat the right to reform this bond so as to cause it to express the true intention of the parties.

On the direct appeal by the surety company, the final contention is made that the court erred in allowing Mrs. Parsons, and the several materialmen, interest on the respective judgments in their favor. Upon this point this cause is ruled by the recent case of *Miss. Fire Ins. Co.* v. *Evans* (Miss.), 120 So. 739, in which it was held that: ''Interest on sums due laborers and materialmen by contractor follows as necessary incident thereto, under Laws 1912, chapter 229 (Hemingway's Code 1927, section 2223), though bond guaranteeing performance of contract does not expressly provide therefor.''

On the direct appeal the judgment of the court below will therefore be affirmed.

Cambre Bros., a copartnership composed of L. A. and F. O. Cambre, who were made defendants to the original bill of complaint, made their answer thereto a cross-bill against the contractor and surety, and also against the complainant, Mrs. Edna Earl Parsons, and her husband and agent, Dr. W. H. Parsons, and the trial court awarded them a recovery against all these cross-defendants, for the amount of their claim for material furnished and used in the construction of the building, and decreed that Dr. and Mrs. Parsons were primarily liable for this claim, and taxed them with all the costs incident to the adjudication of such liability. From the decree so adjudging their liability to Cambre Bros. Dr. and Mrs. Parsons prosecuted a cross-appeal.

By their cross-bill Cambre Bros. sought to charge the cross-appellants with liability for the amount of their claim on the ground that an amount sufficient to pay their claim had been bound in the hands of the owner by virtue of the fact that, as authorized by section 1, chapter 128, Laws of 1918, they gave to the cross-appellants written notice of the amount due them, and of their purpose to claim the benefit of said statute, and, second, that Dr. Parsons orally agreed with them to

608

pay all their bills for material furnished, which were approved by the contractor.

The alleged statutory notice, upon which cross-appellees rely, is in the form of a letter to Dr. Parsons, which was written before any of the material was shipped or delivered to the contractor, and which reads as follows:

"Jackson, Miss. July 28, 1924.

"Dr. W. H. Parsons, Vicksburg, Miss.—Dear Sir: This is to notify you that we have entered into a Contract with Mr. J. W. McNeill, a Contractor, to furnish him material for your Residence, being constructed in Vicksburg, Mississippi.

"An itemized list of the material to be furnished by us for your Residence is enclosed you herein and the cost of same is also shown on this list. You will, therefore observe that the total amount due us for this material is the sum of one thousand eight hundred eighty-five dollars f. o. b. Jackson, Miss. This material will be delivered just as quickly as same is made up, and upon the delivery of any material, a statement of the quantity and the amount due for same will be mailed to you. We shall expect you to hold out of any funds due to J. W. McNeill, Contractor, enough money to pay for material furnished.

"Yours very truly,     Cambre Bros.,

"By L. A. CAMBRE."

To this letter Dr. Parsons replied as follows:

"July 30, 1924.

"Cambre Brothers, Jackson, Miss.—Gentlemen: This will acknowledge receipt of your letter dated July 28th. I note that you expect me to hold out of funds due Mr. John McNeill, contractor, enough money to pay for material which you are furnishing for my house. I am not responsible for any of Mr. McNeill's bills and I would suggest that you arrange with him for payment. My contract with Mr. McNeill provides that I shall pay him each week up to eighty-five per cent of the value of the

material delivered on the ground, but I have nothing to do with the payment of any bill for which he may contract. It might be well for you to require Mr. McNeill, on the delivery of your order, to pay to you eighty-five per cent. of the amount of your bill. I may add that Mr. McNeill carries a bond with the United States Fidelity & Guaranty Company. I am writing you this for your information, so that you may protect yourself in the matter.

"Very truly yours,

"WHP:E                    W. H. PARSONS."

This letter from Cambre Bros. to Dr. Parsons was wholly ineffective as a notice under section 1, chapter 128, Laws of 1918. This section provides in part as follows: "When any contractor or master workman shall not pay any person who may have furnished materials used in the erection, construction, alteration, or repair of any house, . . . or the wages of any journeyman or laborer employed by him therein, any such person, . . . or laborer may give notice in writing to the owner thereof of the amount due him and claim the benefit of this section; and, thereupon the amount that may be due upon the date of the service of such notice by such owner to the contractor or master workman, shall be bound in the hands of such owner for the payment in full, or if insufficient then *pro rata*, of all sums due such person, . . . and laborers, who might lawfully have given notice to said owner hereunder."

It will be noted that this section only authorized this notice to the owner "when any contractor or master workman shall not pay any person who may have furnished materials used in the erection . . . of any house, etc.," and in such case the owner shall be given notice of the amount due. At the time this letter was written the cross-appellees had not furnished the contractor any material, and he did not owe them anything. Dr. Parsons promptly replied to this letter, and, as he

had a right to do, declined to become bound for such material or to assume any obligation in reference thereto. At that time the cross-appellees were in a position to otherwise fully protect themselves against any loss by reason of any future default of the contractor, and by this interchange of letters they acquired no rights against the cross-appellants.

L. A. Cambre, one of the cross-appellees, testified that, a few days after the receipt of Dr. Parsons' letter of July 30, 1924, which is quoted above, he had a personal interview with Dr. Parsons in reference to the matter, and that he (Parsons) then informed him that McNeill was his contractor, and that, if they would have McNeill O. K. each invoice shipped to him, he would pay the same, and that he did pay all of the bills or invoices shipped to McNeill, except the last one, which was the basis of the claim involved herein.

This alleged oral promise to answer for the debt or default of the contractor cannot be made the basis of any liability as against Dr. Parsons personally, or against Mrs. Parsons by reason of the agency of Dr. Parsons, for the reason that it is within the statute of frauds. The cross-bill clearly shows and pleads the continued and primary liability of the contractor, J. W. McNeill, to pay for said material, and a recovery was had against the said contractor for the amount due, and, as said in the case of *Sweatman* v. *Parker*, 49 Miss. 19, the test by which to determine whether a promise to answer for the debt, default, or miscarriage of another person should be in writing is whether such other person himself continues liable.

A state of facts practically identical with those here involved was discussed in the case of *Vicksburg Mfg. & Sup. Co.* v. *Constr. Co.*, 94 Miss. 282, 49 So. 116, and the court there said: "This view as to the distinct liability of Askew [owner] is entirely inconsistent with

any liability by Jaffray [contractor]. Askew and Jaffray cannot be jointly liable. If Jaffray is primarily liable, and Askew secondarily so, as a surety or guarantor, then the undertaking of Askew, not being in writing, is within the statute of frauds. So that appellant's only hope is to hold Askew alone liable for this particular bill for millwork, and this necessarily involves the release of Jaffray. And yet there is suit and personal judgment against Jaffray, there is an express averment that Jaffray owed the eight hundred forty-two dollars, there is a recital as to the notice discussed in a previous part of this opinion, and a prayer that the debt be established as a lien from the date of the notice."

On the cross-appeal, therefore, the decree of the court below will be reversed in so far as it adjudged any liability on the part of Dr. and Mrs. Parsons for the claim of indebtedness due Cambre Bros., and the cross-bill will be dismissed as against the said cross-appellants.

*Affirmed in part; reversed in part.*