**B & G CRANE SERVICE, INC.,**
**plaintiff-appellee,**

v.

**DOLPHIN TITAN INTERNATIONAL,**
**INC., defendant-appellant.**

No. 84–3552.

United States Court of Appeals,
Fifth Circuit.

June 17, 1985.

Before REAVLEY, JOHNSON and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

Dolphin Titan International, Inc., owner of two jack-up drilling rigs, appeals a judgment enforcing its alleged oral promise to guarantee the debt of the rigs' contractor. Persuaded that the district court misapplied the Mississippi statute of frauds to the facts it found, we reverse.

**I**

Dolphin contracted with Gonzales Marine Enterprises, Inc. for the construction of two offshore jack-up drilling rigs at a contract price of $12.3 million. Gonzales leased several cranes and construction mats from B & G Crane Service, Inc. for use in constructing Dolphin's rigs. Gonzales eventually defaulted on its contract with Dolphin and all subcontractors on the

job site ceased further activity. B & G Crane Service then sued Dolphin for the rental balance owed it by Gonzales, alleging that Dolphin had breached its oral promise to pay for the rental of the B & G equipment used in the construction of its rigs.[1]

When Gonzales fell behind in its rental payments to B & G, the crane company threatened to remove its leased equipment and refused to rent Gonzales an additional requested crane. Both Dolphin's President and Secretary then orally promised B & G "that Dolphin would guarantee payment of the B & G rental bill." In reliance on those promises, B & G leased the additional crane and allowed the existing equipment to remain at the construction site. Dolphin established a zero balance account at the Whitney National Bank of New Orleans to pay the B & G bills. Using an existing Gonzales account, Gonzales checks were approved by a Dolphin employee and drawn against a zero balance. When the overdraft reached the bank, the bank would debit a Dolphin account and credit the Gonzales account for the amount of the check; a zero balance in the Gonzales account existing before and after each transaction.

Applying Mississippi law to these facts,[2] the district court held that the Mississippi statute of frauds, applicable to promises to pay a third party's debt, covered only gratuitous promises. As Dolphin received a benefit from the equipment supplied by B & G, its promise was non-gratuitous and the statute of frauds inapplicable. The

court additionally held that "[t]o deny recovery to B & G would permit Dolphin to be unjustly enriched at the expense of B & G." Mississippi's equitable doctrine of unjust enrichment, the court concluded, permitted recovery notwithstanding the statute of frauds. The court rendered judgment against Dolphin for "the value of use of the equipment provided by B & G."

## II

Section 15–3–1 of the Mississippi Revised Statutes requires that "any special promise to answer for the debt or default or miscarriage of another person" be in writing to be enforceable.[3] The statute contains no exception for non-gratuitous guarantees. In making such a distinction, the district court relied on dicta in *Carolina Transformer Co. v. Anderson,* 341 So.2d 1327 (Miss. 1977). While the Mississippi Supreme Court there stated that "the situation contemplated by the statute of frauds is a gratuitous promise by a third party to pay a creditor for debts of the debtor," *id.* at 1330, it did so solely to demonstrate the statute's inapplicability to the facts before it. The statute of frauds played no part in the *Carolina Transformer* holding because the defendant there was not a third party to the contract sued upon. Had Dolphin independently leased the equipment from B & G Crane, instead of simply agreeing to guarantee Gonzales' debt, the statute of frauds would pose no bar. *See, e.g., Thomas McFarland Lumber Co. v. Selby,* 129 Miss. 894, 93 So. 434, 435 (1922); *Delta Lumber Co. v. Wall,* 119 Miss. 350, 80 So.

---

1. B & G Crane Service, a Louisiana resident, initially filed its contract claim in Louisiana state court. Dolphin, a Delaware corporation with a Texas principal place of business, removed the action to federal court on grounds of diversity. 28 U.S.C. § 1441. We recite the facts found by the district judge after a bench trial.

2. A threshold issue below was whether Louisiana or Mississippi law controlled. The district court applied Louisiana's conflicts rules to conclude that "Mississippi ha[d] the greater interest in the application of its law" because the rigs were constructed in Mississippi, Gonzales was incorporated in Mississippi, B & G delivered its equipment to Gonzales' Mississippi shipyard, and the alleged oral promise was made at the

Mississippi job site. Choice of law is not at issue.

3. Miss.Rev.Stat.Ann. § 15–3–1 provides in pertinent part:

An action shall not be brought whereby to charge a defendant or other party: (a) upon any special promise to answer for the debt or default or miscarriage of another person ... unless, in each of said cases, the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith or signed by some person by him or her thereunto lawfully authorized in writing.

782 (1919). But Dolphin was not in direct privity with B & G. All purchase orders for the rental equipment ran from Gonzales Marine to B & G Crane Service. Similarly, all invoices ran from B & G to Gonzales and were paid by checks drawn on Gonzales' separate account. As Dolphin was a third party with respect to the B & G and Gonzales contract, *Carolina Transformer* is inapposite.

Mississippi courts have addressed situations virtually identical to that before us. In *Phillips v. F.G. & H. Millwork Manufacturing Co.*, 190 So.2d 843 (Miss.1966), for example, a contractor, Watts, agreed to furnish all labor and materials for the construction of Phillips' home. Watts subcontracted the materials from F.G. & H. Millwork; the supply invoices charged directly to the contractor. The subcontractor then sued Phillips, alleging that she had promised F.G. & H. by telephone that she would be responsible for the materials used in constructing her house. Phillips had discharged her debt with Watts, and denied ever agreeing to pay F.G. & H. Millwork for the materials. The Mississippi Supreme Court held that Phillips was in no way liable to the subcontractor, reasoning that "such an oral agreement on the part of [Phillips] to be liable for the debt of Watts is invalid under the provisions of the Statute of Frauds." *Id.* at 845.

Likewise, in *King v. Hankins*, 209 So.2d 190 (Miss.1968), King contracted with Bowden to build a house. Bowden purchased the materials from Hankins. After Bowden abandoned the project without paying Hankins, the materialman sued King. The Mississippi Supreme Court found that there was no evidence that King had entered into an original contract with Hankins; invoices were made out to Bowden and Bowden remained liable for them. As King owed nothing to the contractor, the materialman no longer had recourse against King. "[M]oreover," the court held, "an oral agreement to be liable for the debt of Bowden would be invalid under the statute of frauds." *Id.* at 191. *See also Turman v. Tupelo Brick & Tile Co.*, 187 Miss. 33, 192 So. 40, 41 (Miss.1939) (owner not liable to subcontractor when "[t]here was no promise *in writing* by [owner] to pay the debt of [contractor]"); *United States Fidelity & Guaranty Co. v. Parsons*, 154 Miss. 587, 122 So. 544, 550 (1929) (alleged oral promise of owner's agent to answer for debt of contractor cannot be made the basis for liability against agent or owner because promise within statute of frauds); *Vicksburg Manufacturing & Supply Co. v. J.H. Jeffray Construction Co.*, 94 Miss. 282, 49 So. 116 (1909) (building owner's oral guarantee for material furnished his contractor within statute of frauds.)

■ Mississippi courts, then, do not classify the type of oral promise alleged here as non-gratuitous or excepted from the statute of frauds. It is apparently undisputed that Dolphin fully satisfied its contract with its defaulting contractor, Gonzales Marine Enterprises. Mississippi law provides that once an owner, like Dolphin, has fully discharged its contract with its prime contractor, subcontractors, laborers and materialmen, like B & G, have no lien on the property or any valid claim against the owner for the debts owed them by the contractor. *See* Miss.Code Ann. § 356. *See also Phillips*, 190 So.2d at 845; *Williams v. Taylor*, 216 Miss. 563, 62 So.2d 883, 885 (1953); *Chancellor v. Melvin*, 211 Miss. 590, 52 So.2d 360 (1951). Thus, once a property owner fully discharges its obligation under a construction contract, any promise to pay more than what was originally due the contractor is gratuitous and squarely within the statute of frauds.[4]

---

4. We note that after the trial of this case, a Mississippi chancery court addressed facts and parties virtually identical to those here. *See Industrial Systems, Inc. v. Gonzales Marine Enterprises Inc. and Dolphin-Titan International, Inc., et al.*, No. 16,242 (Miss. Ch. Oct. 16, 1984). In *Industrial Systems*, Dolphin again contracted with Gonzales for the construction of certain oil rigs. Industrial Systems, Inc. supplied welding materials to Gonzales for use in that construction. The supplier sued Gonzales and Dolphin on claims almost indistinguishable from B & G's here. The chancery court denied the supplier recovery against Dolphin, holding that *Gonzales*

Nor can B & G evade the statute's grasp on the theory of unjust enrichment. While Mississippi permits that equitable doctrine to prevail notwithstanding the statute of frauds, *see Estate of McKellar v. Brown*, 404 So.2d 550, 553 (Miss.1981), Dolphin, on these facts, was not unjustly enriched. Dolphin had fully paid Gonzales for the rig construction. It did not receive anything it had not paid for. If anyone has unjustly profited and should be forced to disgorge its enrichment, it is Gonzales Marine. *See Jackson v. Sam Finley, Inc.*, 366 F.2d 148, 153 (5th Cir.1966) (subcontractor "entitled under Mississippi law to recover [from contractor] the fair value of services and materials rendered under [subcontract]"). We will not require Dolphin to pay twice for its drilling rigs.[5]

### III

Because we hold that the district court misapplied Mississippi law to the facts it found, we do not reach Dolphin's alternative argument branding those factual findings clearly erroneous. *See* Fed.R.Civ.P. 52(a).

The district court's judgment is REVERSED.

---

*Marine* was an independent contractor, not an agent or servant of Dolphin; that there was no evidence of quantum meruit; *and* that the Mississippi statute of frauds barred "any claim that Dolphin had guaranteed payment of [the contractor]'s indebtedness to [the supplier], if any, since there was no writing as required under the terms of the statute."

5. We do not address whether the doctrine of promissory estoppel has any application here,

as that theory was argued neither below nor on appeal. *Reynolds Metals Co. v. Westinghouse Electric Corp.*, 758 F.2d 1073, 1078 (5th Cir. 1985); *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 958 (5th Cir.1984). *Compare Anderson Construction Co., Inc. v. Lyon Metal Products, Inc.*, 370 So.2d 935 (Miss.1979); *Thomas v. Prewitt*, 355 So.2d 657 (Miss.1978) *with Sanders v. Dantzler*, 375 So.2d 774 (Miss.1979); *Martin v. Franklin*, 245 So.2d 602 (Miss.1971).